

FILED

Mar 15 2017, 5:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven T. Fulk
Fulk & Associates, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Andrew J. Miroff
Emmanuel V. Boulukos
Derek R. Molter
Ice Miller LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Virginia E. Mourning, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Allison Transmission, Inc., <br> *Appellee-Defendant* | March 15, 2017 <br><br> Court of Appeals Case No. <br> 49A02-1608-MI-1822 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable James A. Joven, Judge <br><br> Trial Court Cause No. <br> 49D13-1504-MI-12620 |

**Vaidik, Chief Judge.**

# Case Summary

[1] This case involves the interplay between Indiana Trial Rules 12(C) and 12(B). A Trial Rule 12(C) motion for judgment on the pleadings is typically directed toward a determination of the substantive merits of the controversy. A Trial Rule 12(B) motion to dismiss, in contrast, is directed solely toward procedural defects or the statement of the plaintiff's claim for relief and does not seek to determine the substantive merits of the controversy. However, a defense of failure to state a claim upon which relief can be granted can be raised under either Trial Rule 12(B)(6) or Trial Rule 12(C). When raised in a Trial Rule 12(C) motion, the court must treat the motion pursuant to Trial Rule 12(B)(6) and, if granted, give the plaintiff ten days to amend the complaint once as of right.

[2] Here, Virginia Mourning sued Allison Transmission, Inc. claiming that it played a role in getting her fired from her long-time employer, Ternes Packaging. Mourning alleged tortious interference with an employment contract and defamation. Allison Transmission then filed an ambiguously worded "12(C) Motion to Dismiss" alleging that Mourning "failed to state a claim upon which relief may be granted" and that her claims failed "as a matter of law." The trial court granted Allison Transmission's motion and entered final judgment in its favor. Applying the above principles here, we find that Mourning sufficiently pled her defamation claim but not her tortious-interference claim. We therefore reverse and remand this case to the trial court to give Mourning an opportunity to amend her complaint once as of right.

# Facts and Procedural History

[3] In accordance with our standard of review for judgments on the pleadings, our review is confined to the pleadings, accepting well-pled material facts in the complaint as true. Mourning became an at-will employee with Ternes Packaging in 1997. Ternes provides supply-chain-management services to Allison Transmission.

[4] From early February 2013 to late March 2013, Mourning took time off under the federal Family and Medical Leave Act (FMLA). While Mourning was on medical leave, a group of employees under her supervision filed a complaint against her. Mourning's manager at the time assisted these employees in making their complaint. The complaining employees were further assisted in making their complaint by individuals at Allison Transmission.

[5] Mourning was first informed of the complaint when she returned from medical leave on April 1, 2013, at which point she was suspended for two weeks and then terminated on April 16, 2013.

[6] In May 2014, Mourning sued Ternes in federal court alleging violations of Title VII of the Civil Rights Act of 1964 and FMLA. Mourning later added state-law claims against Allison Transmission for tortious interference with an employment contract and defamation, but these claims were dismissed for lack of subject-matter jurisdiction. For the claims against Ternes, the district court

granted summary judgment in its favor. *See Mourning v. Ternes Packaging—Ind., Inc.*, 1:14-cv-00772-SEB-DML (S.D. Ind. Feb. 22, 2016).[1]

[7]    Mourning then filed a complaint against Allison Transmission in Marion Superior Court in September 2015. Mourning made the same claims that she had made in federal court: tortious interference with an employment contract and defamation. The tortious-interference count (Count I) specifically alleges:

> 16. During the period of Plaintiff's medical leave from early February, 2013, until her return on or about April 1, 2013, and during her suspension upon her return to work until her termination on or about April 16, 2013, Defendant Allison by and through its agents including without limitation Ron Sauer, Senior Director of Global Parts and Customization Centers, and Dennis Nicholas, Director of Orders Administration, intentionally induced the breach of the employment contract between Ternes and Plaintiff by communicating with Ternes (specifically beginning at a meeting initiated by Sauer and Nicholas on February 26, 2013, and continuing through Plaintiff's termination on April 16, 2013) that Plaintiff was not competent to continue working in her position with Ternes in their provision of bundled services to Allison, and that Plaintiff was not to continue in her position of employment with Ternes.

> 17. Defendant Allison had no justification for inducing the breach of the employment contract between Ternes and Plaintiff, as Defendant willfully failed to abide by established procedure regarding staffing requests or complaints/discipline directed to Ternes Packaging, and as Defendant leveraged its continued business relationship with Ternes (which was at that time in re-

---

[1] Mourning has appealed that decision, and the appeal is pending.

bid negotiations) to demand the termination of Plaintiff's employment.

Appellant's App. Vol. II pp. 10-11. The defamation count (Count II) specifically alleges:

20. During the period of Plaintiff's medical leave from early February, 2013, until her return on or about April 1, 2013, and during her suspension upon her return to work until her termination on or about April 16, 2013, agent(s) for Defendant Allison by and through its agents including without limitation Ron Sauer, Senior Director of Global Parts and Customization Centers, and Dennis Nicholas, Director of Orders Administration, made defamatory communications regarding Plaintiff and her job to Ternes (specifically beginning at a meeting initiated by Sauer and Nicholas on February 26, 2013, and continuing through Plaintiff's termination on April 16, 2013) stating that Plaintiff did not embrace change, was not data-driven, had performance issues in her position, was not competent to continue working in her position managing staff or providing bundled services to Allison, and should not . . . continue in her position of employment with Ternes.

21. The communications made by Defendant Allison regarding Plaintiff during this period were false, were made with malice (as Defendant leveraged its continued business relationship with Ternes—which was at that time in re-bid negotiations—to defame Plaintiff and secure her termi[n]ation), and were published through inter-company communications between Allison and Ternes (including in-person communications between Sauer and Nicholas and employees at Ternes beginning on February 26, 2013), and through intra-company communications within Ternes itself.

*Id.* at 11-12. Allison Transmission filed its answer in October 2015.[2]

[8] In January 2016, Allison Transmission filed a "12(C) Motion to Dismiss" Mourning's complaint in which it alleged that Mourning "failed to state a claim upon which relief may be granted" and that her claims failed "as a matter of law." *Id.* at 15-16. Mourning responded that she sufficiently alleged her claims and, in the alternative, because Allison Transmission's Trial Rule 12(C) motion alleged failure to state a claim, it should be treated like a Trial Rule 12(B)(6) motion, which meant that she would have a right to amend her complaint and fix any defects if the motion were granted. In March 2016, the trial court granted Allison Transmission's motion and entered final judgment in its favor.

[9] Mourning now appeals.

## Discussion and Decision

[10] This case involves the relationship between Trial Rules 12(C) and 12(B). According to Trial Rule 12(C), after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. A motion for judgment on the pleadings is typically directed toward a determination of the substantive merits of the controversy. *Davis ex rel. Davis v. Ford Motor Co.*, 747 N.E.2d 1146, 1149 (Ind. Ct. App. 2001) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1369 (3d

---

[2] The answer is not included in the record on appeal.

ed. 2004)), *trans. denied*. Such motions should be granted "only where it is clear from the face of the complaint that under no circumstances could relief be granted." *Woodruff v. Ind. Family & Soc. Servs. Admin.*, 964 N.E.2d 784, 789 (Ind. 2012) (quotation omitted); *see also ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016) (judgment on the pleadings should be granted only "where it is clear from the face of the pleadings that one party is entitled to prevail as a matter of law"). "[A] judgment on the pleadings is, in reality, a summary judgment minus affidavits and other supporting documents." 1A William F. Harvey, Indiana Practice, *Rules of Procedure Annotated*, Trial Rule 12(C) Civil Code Study Commission Comments (3d ed. 1999).

[11] Trial Rule 12(B), on the other hand, provides for certain defenses to be raised by motion before an answer is filed. In contrast to a typical Trial Rule 12(C) motion for judgment on the pleadings, a Trial Rule 12(B) motion is directed solely toward procedural defects or the statement of the plaintiff's claim for relief and does not seek to determine the substantive merits of the controversy. *Davis*, 747 N.E.2d at 1149; 5C Wright & Miller, § 1369. One of the defenses that can be raised is failure to state a claim upon which relief can be granted. *See* Ind. Trial Rule 12(B)(6). The basic purpose of a Trial Rule 12(B)(6) motion to dismiss is to test the legal sufficiency of the complaint to state an actionable claim, not to test the truth of the facts alleged in the complaint. *Davis*, 747 N.E.2d at 1149. This defense is typically used in one of three situations: (1) the allegations in the complaint are so insufficient that the pleader has stated no

claim for relief; (2) the pleader has alleged sufficient facts to state a claim for relief but has also alleged facts that disclose a bar to the suit or claim (such as when the complaint establishes a statute-of-limitations defense); and (3) the pleader has made an allegation that is not recognized in the law as a basis for recovery. 22 Stephen E. Arthur, Indiana Practice, *Civil Trial Practice* § 15.19 (2d ed. 2007). Importantly, when a motion to dismiss is sustained for failure to state a claim under 12(B)(6), "the pleading may be amended once as of right pursuant to Rule 15(A) within ten [10] days after service of notice of the court's order . . . ." T.R. 12(B).

[12] However, a motion under Trial Rule 12(B)(6) is not the only way to raise a defense of failure to state a claim upon which relief can be granted. This defense can also be made in a Trial Rule 12(C) motion or at trial. T.R. 12(H). We have previously explained the relationship between Trial Rule 12(C) and Trial Rule 12(B) as follows: "a T.R. 12(B) motion is essentially procedural, while a T.R. 12(C) motion is substantive **unless it is brought on T.R. 12(B) grounds**." *Davis*, 747 N.E.2d at 1150 (emphasis added). Accordingly, where a motion for judgment on the pleadings raises a defense of failure to state a claim upon which relief can be granted, the motion for purposes of that defense should be treated in the same manner as a Trial Rule 12(B)(6) motion to dismiss for failure to state a claim. *See Columbus Specialty Surgery Ctr. v. Se. Ind. Health Org.*, 22 N.E.3d 665, 669 (Ind. Ct. App. 2014); *Gregory & Appel, Inc. v. Duck*, 459 N.E.2d 46, 49 (Ind. Ct. App. 1984) ("We agree that where a 12(B)(6) defense is raised by a 12(C) motion for judgment on the pleadings, the court must treat the

motion pursuant to 12(B)(6) and accord the non-moving party ten days to amend as a matter of right."); *Anderson v. Anderson*, 399 N.E.2d 391, 405 (Ind. Ct. App. 1979); *see also* 22 Stephen E. Arthur, § 15.24 ("When a motion under Trial Rule 12(C) challenges the sufficiency of a plaintiff's complaint because of the failure to state a claim upon which relief can be granted, that motion should be determined by the same standard that is applicable to a motion under Trial Rule 12(B)(6)."). The rationale for this rule is that a plaintiff's right to amend a complaint should not be based on whether the defendant's challenge to its sufficiency is brought under the guise of Trial Rule 12(B)(6) or Trial Rule 12(C). *Davis*, 747 N.E.2d at 1151. "There is no principled reason why the fact of closed pleadings should be determinative of the plaintiff's right to amend his or her complaint when the basis of the motion for judgment on the pleadings is the failure of the complaint to state a claim." *Id.*

[13]    Here, Mourning contends that the trial court erred by not treating Allison Transmission's Trial Rule 12(C) motion as a Trial Rule 12(B)(6) motion, which would have given her an opportunity to amend her complaint and fix any defects. Allison Transmission responds that the trial court properly treated it as a substantive Trial Rule 12(C) motion. It argues that "[a] customer complaint does not constitute tortious interference or defamation as a matter of law." Appellee's Br. p. 24. But Allison Transmission fails to cite any authority in support of its position that a customer or client can **never** be held liable for tortious interference or defamation based on statements it makes to a service provider about one of the service provider's employees, and we are aware of

none. Accordingly, the trial court's judgment on the merits in Allison Transmission's favor cannot be affirmed on this basis.

[14] As for whether Mourning failed to state a claim upon which relief can be granted, which is a defense that may be made in a "procedural" Trial Rule 12(C) motion and is subject to Trial Rule 12(B)(6) standards, Allison Transmission first argues that Mourning did not sufficiently plead the operative facts to support her claim of tortious interference with an employment contract. *See State v. Am. Family Voices, Inc.*, 898 N.E.2d 293, 296 (Ind. 2008) (noting that although Indiana's notice-pleading rules do not require the complaint to state all elements of a cause of action, the plaintiff must still plead the operative facts necessary to set forth an actionable claim).

[15] Tortious interference with a contractual relationship consists of the following elements: (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the existence of the contract; (3) the defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful inducement of the breach. *Duty v. Boys & Girls Club of Porter Cty.*, 23 N.E.3d 768, 774 (Ind. Ct. App. 2014). In order to adequately plead the fourth element—the absence of justification—the plaintiff must state more than a mere assertion that the defendant's conduct was unjustified. *Id.* at 775. That is, the plaintiff must set forth factual allegations from which it can reasonably be inferred that the defendant's conduct was unjustified. *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000). In this context,

"unjustified" means "malicious and exclusively directed to the injury and damage of another." *Duty*, 23 N.E.3d at 775; *see also Bochnowski v. Peoples Fed. Sav. & Loan Ass'n*, 571 N.E.2d 282, 285 (Ind. 1991) ("The plaintiff bringing [an action for tortious interference] must be prepared to show that the defendant interferer acted intentionally and without a legitimate business purpose.").

[16] To support the absence-of-justification element, Mourning alleged the following facts:

> 17. Defendant Allison had no justification for inducing the breach of the employment contract between Ternes and Plaintiff, as Defendant willfully failed to abide by established procedure regarding staffing requests or complaints/discipline directed to Ternes Packaging, and as Defendant leveraged its continued business relationship with Ternes (which was at that time in re-bid negotiations) to demand the termination of Plaintiff's employment.

Appellant's App. Vol. II pp. 10-11. As Allison Transmission points out on appeal, Mourning's factual allegations "address **how** Allison allegedly went about causing [her] to get fired, not **why** it did so." Appellee's Br. p. 16. In other words, just because Allison Transmission may not have gone through the correct channels or may have been in contract negotiations with Ternes does not mean that it acted unjustifiably, i.e. with malice, when it made the statements about Mourning. Accordingly, Mourning's complaint fails to state a claim for tortious interference. *Cf. Duty*, 23 N.E.3d at 775 (concluding that plaintiff stated a claim for tortious interference by alleging that defendant's

actions were "vindictive," because "[v]indictiveness is, by its nature, malicious").

[17]     Allison Transmission next argues that Mourning did not sufficiently plead the operative facts to support her claim of defamation. The general elements of defamation are: (1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages.[3] *Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 136 (Ind. 2006). Mourning alleged the following facts to support her defamation claim:

> 20. [Defendant Allison stated] that Plaintiff did not embrace change, was not data-driven, had performance issues in her position, was not competent to continue working in her position managing staff or providing bundled services to Allison, and should not . . . continue in her position of employment with Ternes.[4]

---

[3] The parties proceed as if malice is a required element of Mourning's defamation claim; indeed, Mourning's complaint alleges malice. While private individuals must show actual malice when the communication in question relates to an issue of public concern, if the matter does not concern the public, then malice is not a required element. *See* 23 James R. Fisher & Debra H. Miller, Indiana Practice, *Personal Injury Law and Practice*, § 3:21 (2d ed. 2007); *see also Brewington v. State*, 7 N.E.3d 946, 962 (Ind. 2014) ("Determining whether a controversy is of public or general concern is a question of law for the court. . . . Out of an abundance of caution, though, we will assume arguendo that if a psychologist actually were abusing his position of trust to give corrupt expert testimony or for personal gratification, it would be a matter of public or general concern. **Under that assumption, the actual-malice standard would apply** . . . ." (emphasis added)), *reh'g denied*. It is not clear why the parties treat malice as a required element in this seemingly private matter. However, because they do, we do the same.

[4] Allison Transmission argues that "[n]one of th[e]se statements are false statements of **verifiable fact**." Appellee's Br. p. 18. Even a statement that on first blush appears to constitute an opinion may still be legally defamatory if "a reasonable fact finder could conclude that the statement implies facts which may be proven true or false." *McQueen v. Fayette Cty. Sch. Corp.*, 711 N.E.2d 62, 66 (Ind. Ct. App. 1999), *trans. denied*. Accordingly, we find that Mourning's allegations are sufficient. *See id.* ("Miller's statement [that McQueen destroyed the girls' basketball program] implies verifiable facts regarding McQueen's performance and conduct as a basketball scout and coach. The statement at issue was not uttered by an irate fan during a hotly contested basketball game or by a sports commentator, but by

21. The communications made by Defendant Allison regarding Plaintiff during this period were false, **were made with malice (as Defendant leveraged its continued business relationship with Ternes—which was at that time in re-bid negotiations—to defame Plaintiff and secure her termi[n]ation)**, and were published through inter-company communications between Allison and Ternes . . . and through intra-company communications within Ternes itself.

22. Defendant Allison . . . made these communications without belief or grounds for belief in their truth, as at the time Plaintiff went on leave she had no disciplinary record or pending complaints whatsoever regarding her performance in the provision of bundled services to Allison.

Appellant's App. Vol. II pp. 11-12 (emphasis added).

[18]     Allison Transmission specifically challenges the malice element of Mourning's defamation claim. Allison Transmission makes the same argument that it did with respect to the absence-of-justification element of Mourning's tortious-interference claim, that is, it argues that Mourning's factual allegations for the malice element address "**how** Allison allegedly caused M[s]. Mourning's termination, not **why**," which is not enough. Appellee's Br. p. 19.

---

another coach, a professional colleague. At this early stage in the litigation, we must infer there was a factual predicate for Miller's statement of McQueen's job performance and that those within earshot understood his statement to be grounded in fact. Thus, McQueen's complaint is sufficient on its face, and it would be premature to dismiss the complaint [pursuant to Trial Rule 12(B)(6)].").

But malice for purposes of tortious interference is different than malice for purposes of defamation. In the defamation context, the actual-malice element is not to be confused with the ordinary definition of malice as "an evil intent or motive arising from spite or ill will." *McCollough v. Noblesville Schs.*, 63 N.E.3d 334, 348 (Ind. Ct. App. 2016) (quotation omitted), *trans. denied*. Rather, actual malice as an element of defamation exists when the defendant publishes a defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* (quotations omitted). Here, Mourning included parenthetical information after it alleged that Allison Transmission made the defamatory statements with "malice":

> 21. The communications made by Defendant Allison regarding Plaintiff during this period . . . were made with malice **(as Defendant leveraged its continued business relationship with Ternes—which was at that time in re-bid negotiations—to defame Plaintiff and secure her termi[n]ation)** . . . .

Appellant's App. Vol. II p. 12 (emphasis added). Although this parenthetical information does not address the "actual malice" standard for defamation, Mourning alleged in Paragraph No. 22 that Allison Transmission made the false communications "without belief or grounds for belief in their truth."[5] This

---

[5] Anticipating that Allison Transmission would claim the common-interest privilege, *see McCollough*, 63 N.E.3d at 348 (explaining that this privilege applies to communications made in good faith on any subject matter in which the party making the communication has an interest if made to a person having a corresponding interest), Mourning alleged in Paragraph No. 22 that Allison Transmission abused this privilege as follows:

satisfies the specificity required for stating actual malice in a defamation suit under our notice-pleadings rules, and the parenthetical information about Allison Transmission leveraging its business relationship is mere surplusage. *See Miller by Miller v. Mem'l Hosp. of S. Bend, Inc.*, 679 N.E.2d 1329, 1332 (Ind. 1997) (the notice-pleading rule "is designed to discourage battles over mere form of statement and to sweep away needless controversies that have occurred either to delay trial on the merits or to prevent a party from having a trial because of mistakes in statement" (quotation omitted)); *see also* Ind. Trial Rule 8(F) ("All pleadings shall be so construed as to do substantial justice, lead to disposition on the merits, and avoid litigation of procedural points.").

---

22. Defendant Allison made the foregoing defamatory communications in bad faith (as Defendant willfully failed to abide by established procedure regarding staffing requests or complaints/discipline directed to Ternes Packaging, and as Defendant leveraged its continued business relationship with Ternes which was at that time in re-bid negotiations), excessively published them through numerous conversations over the period of Plaintiff's medical absence, and/or made these communications without belief or grounds for belief in their truth, as at the time Plaintiff went on leave she had no disciplinary record or pending complaints whatsoever regarding her performance in the provision of bundled services to Allison.

Appellant's App. Vol. II p. 12; *see McCollough*, 63 N.E.3d at 348 (explaining that plaintiff can show an abuse of this privilege in one of three ways: (1) the communicator was motivated primarily by ill will (absence of good faith); (2) the communication was published excessively; or (3) the communication was made without belief or grounds for belief in its truth). Mourning's allegation that Allison Transmission published the communications excessively through numerous conversations is sufficient to withstand Allison Transmission's Trial Rule 12(B)(6) challenge. *See* Appellee's Br. p. 24 (Allison Transmission explaining that whether its statements are subject to the privilege is a "typical Rule 12(B)(6) analysis").

We reverse the dismissal of Mourning's defamation claim and remand this case to give Mourning an opportunity to amend her tortious-interference claim once as of right pursuant to Trial Rule 15(A).[6] *See* T.R. 12(B).

Reversed and remanded.

Bradford, J., and Brown, J., concur.

---

[6] Allison Transmission argues that giving Mourning an opportunity to amend her complaint would be a "fleeting victory" because collateral estoppel "would then bar her suit based on the recent summary judgment in federal court . . . ." Appellee's Br. p. 25. Because Allison Transmission does not list the elements of collateral estoppel or explain how they apply to the facts in this case, this argument is waived.