## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 24 2017, 10:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

James C. Spencer
Thomas M. Dattilo
Dattilo Law Office
Madison, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Zerlie Charles,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Vickie Vest,<br>*Appellee-Defendant.* | October 24, 2017<br><br>Court of Appeals Case No.<br>72A01-1706-SC-1252<br><br>Appeal from the Scott Superior Court<br><br>The Honorable Andrew Adams, Special Judge<br><br>Trial Court Cause No.<br>72D01-1611-SC-387 |

**Bailey, Judge.**

# Case Summary

[1] Zerlie Charles ("Charles") appeals the trial court's ruling, following a bench trial, against her in her complaint against Vickie Vest ("Vest") for defamation. On appeal, she raises only one issue, namely, whether the trial court's ruling on her defamation claim was contrary to law. We hold that it was, and we reverse.

# Facts and Procedural History

[2] Vest cohabitated with Charles' son, Robert ("Robert"), for approximately three years. Robert owned a 2002 Chevrolet Silverado pick-up truck. On February 10, 2015, Robert died. About ten days later, Vest made a police report with Scott County that the 2002 Chevrolet Silverado pick-up truck had been stolen. A short time later, the police recovered the truck in a church parking lot.

[3] On February 28, 2015, Vest posted the following message on her Facebook page:

> Just have to say [a]ll the talk that's being said about Robert['s] things being stolen[,] *[i]f it was stolen I don't know but I do know my truck was and[,] yes[,] Zerlie Charles had everything to do with it[,] that's facts [sic]*. I didn't even get all my personal things out of the house before his mom went physco [sic]. Butt [sic] that's OK[.] I will be OK[.] I lost my soul mate[,] thrown out of his house[,] and had my truck stolen all in 2 weeks. So I really don't give a DAM! [sic] what Zerlie Charles has to say. I was there for Robert[.] [S]he had to have control[.] [W]ell she got it all now. And still ain't happy. Life goes on and will be great. She can talk all she wants and we all know she will because that how it

is[.]  I have our memories and a lot of wonderful ones that no one can take away!  Not even Zerlie Charles!!!!!!!!!

Exhibits at 2 (emphasis added).  Eleven people "liked" that message, and eight people posted comments in response to the message.  *Id.*

[4]  On November 30, 2016, Charles filed in the Small Claims Division of the Scott County Superior Court a complaint against Vest "for defamation *per se*."  Appellant's App. at 7.  Specifically, Charles contended that Vest defamed Charles when Vest stated in a Facebook post: "I do know my truck was [stolen] and[,] yes[,] Zerlie Charles had everything to do with it[,] that's facts [sic]."  *Id.*; Exhibits at 2.  Charles also claimed that Vest "intimated" to the Scott County Sheriff's Office that Charles had stolen the truck.  Exhibits at 2.  On December 29, Vest filed a counter-claim for defamation against Charles.

[5]  The trial court held a trial on the parties' claims on April 7, 2017.  At the trial, Vest admitted that, in a different case, she had pled guilty to forging the title of the 2002 Chevrolet Silverado pick-up truck from Robert's name to her own name.  Vest admitted that she had stolen the truck she had reported as stolen to the police.  Vest further admitted that she sold the truck to a third party in June of 2016.  Charles testified that she (Charles) had not stolen the truck.  And Charles admitted into evidence, without objection, as Plaintiff's Exhibit 2 an order of the Jefferson Circuit Court in a civil collection case involving Robert's estate in which the court concluded that Vest had "unlawfully converted the 2002 Chevrolet Silverado to her own use," and granted Robert's estate $5,000 for the value of the truck and $5,000 in exemplary damages.  Exhibits at 4-5.

Charles testified that, because of the allegation posted on Facebook that she had stolen the truck, she could no longer sleep at night, her reputation had been "ruined," and some of her good friends did not "come around anymore." Tr. at 22-23. Kevin Zehner, Robert's "best friend" and a registered nurse specializing in behavioral health and anxiety issues, testified that he had observed in Charles anxiety, depression, tears, pain, and emotional distress caused by the death of her son and "being called a thief." Tr. at 28, 30.

On May 12, 2017, the trial court issued the following written order:

> Comes now the Court[,] having heard testimony [and] reviewed pleadings and case law[,] and finds as follows:
>
> 1. That the Plaintiff failed to meet her case for defamation per se as the evidence presented did not meet the standard for per se or per quod.
>
> 2. That the Defendant fail[ed] to meet her burden on [her] counter claim.

Appellant's App. at 30. This appeal ensued.

# Discussion and Decision
## Standard of Review

Charles alleges that Vest defamed her. As an initial matter, we note that Vest has not filed an appellee's brief; therefore, we apply a less stringent standard of review and may reverse the trial court if Charles has shown prima facie error.

Ind. Appellate Rule 45(D). "Prima facie error" is error at first sight, at first appearance, or on the face of it. *See, e.g.*, *Progressive Ins. Co. v. Harger*, 777 N.E.2d 91, 92 (Ind. Ct. App. 2002).

[9] We also note that Charles appeals from a negative judgment.

> A judgment entered against a party who bore the burden of proof at trial is a negative judgment. *Garling v. Ind. Dep't of Natural Res.,* 766 N.E.2d 409, 411 (Ind. Ct. App. 2002). On appeal, we will not reverse a negative judgment unless it is contrary to law. *Mominee v. King*, 629 N.E.2d 1280, 1282 (Ind. Ct. App. 1994). To determine whether a judgment is contrary to law, we consider the evidence in the light most favorable to the appellee, together with all the reasonable inferences to be drawn therefrom. *J.W. v. Hendricks Cnty. Office of Family & Children*, 697 N.E.2d 480, 482 (Ind. Ct. App. 1998). A party appealing from a negative judgment must show that the evidence points unerringly to a conclusion different than that reached by the trial court. *Mominee*, 629 N.E.2d at 1282.

*Smith v. Dermatology Associates of Fort Wayne, P.C.*, 977 N.E.2d 1, 4 (Ind. Ct. App. 2012).

# Defamation

[10] Our Supreme Court has clearly laid out the law of defamation:

> To establish a claim of defamation, a "plaintiff must prove the existence of 'a communication with defamatory imputation, malice, publication, and damages.'" *Trail v. Boys & Girls Clubs of N.W. Ind.*, 845 N.E.2d 130, 136 (Ind. 2006) (quoting *Davidson v. Perron*, 716 N.E.2d 29, 37 (Ind. Ct. App. 1999), *trans. denied*). A statement is defamatory if it tends "to harm a person's reputation

by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person." *Kelley v. Tanoos*, 865 N.E.2d 593, 596 (Ind. 2007) (internal citation omitted). One type of defamation action, alleging defamation *per se*, arises when the language of a statement, without reference to extrinsic evidence, constitutes an imputation of (1) criminal conduct, (2) a loathsome disease, (3) misconduct in a person's trade, profession, office, or occupation, or (4) sexual misconduct. *Id.*; *see also Rambo v. Cohen*, 587 N.E.2d 140, 145 (Ind. Ct. App. 1992), *trans. denied*; *Elliott v. Roach*, 409 N.E.2d 661, 683 (Ind. Ct. App. 1980), *trans. not sought*. In contrast, if the words used are not defamatory in themselves, but become so only when understood in the context of extrinsic evidence, they are considered defamatory *per quod*. *McQueen v. Fayette County Sch. Corp.*, 711 N.E.2d 62, 65 (Ind. Ct. App. 1999), *trans. denied*. In actions for defamation *per se*, damages are presumed, but in actions for defamation *per quod*, a plaintiff must prove damages. *Rambo*, 587 N.E.2d at 145-46.

*Dugan v. Mittal Steel USA, Inc.*, 929 N.E.2d 184, 186 (Ind. 2010). Moreover, "[a]ny statement actionable for defamation must not only be defamatory in nature, but also false." *Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 956 (Ind. Ct. App. 2014), *trans. denied*. "Whether a communication is defamatory or not is a question of law for the court, unless the communication is susceptible to either a defamatory or nondefamatory interpretation—in which case the matter may be submitted to the jury." *Kelley v. Tanoos*, 865 N.E.2d 593, 596 (Ind. 2007) (citing *Rambo*, 587 N.E.2d at 145).

[11] Here, Charles has shown that Vest's statement—"I do know my truck was [stolen] and[,] yes[,] Zerlie Charles had everything to do with it[,] that's facts [sic]"—is defamation *per se*. Exhibits at 2. The statement quite clearly imputes

to Charles criminal conduct—i.e., stealing a truck.  *See* Ind. Code § 35-43-4-2.5 (making auto theft a Level 6 felony).  Moreover, the statement was clearly published on Vest's Facebook page, where at least eleven people read it and "liked" it, Exhibits at 2.  *See, e.g.*, *Sch. City of Hammond Dist. v. Rueth*, 71 N.E.3d 33, 43 (Ind. Ct. App. 2017) (noting that, within the context of defamation, "publish" means to communicate the statement to a third person or persons), *trans. denied*.

[12]    Furthermore, there was no evidence that Vest's Facebook statement was true. Charles testified that she did not steal the truck and there was no evidence in the record indicating otherwise.  *See* I.C. § 34-15-1-2 (providing a defendant in a libel or slander action may allege truth of the allegedly defamatory statement as a defense); *see also, e.g.*, *Melton v. Ousley*, 925 N.E.2d 430, 437 (Ind. Ct. App. 2010) ("[T]ruth is a complete defense in civil actions for defamation."). Although Vest said in her opening statement that the only person who could have stolen the truck was someone with a key and Charles had a key, that statement was not evidence.  And Vest did not testify at any point that her statement that Charles stole the truck was true; in fact, she repeatedly noted that she had never used the word "thief" in reference to Charles and that she only said Charles "was involved" because Charles had a key to the truck.  Tr. at 47. Moreover, Vest admitted it was not legally *her* truck because she had forged the title to the vehicle over to herself; thus, her statement that "her" truck was stolen was false.

[13] And Charles was not required to prove "malice" as part of her defamation claim. Malice is not a required element of a defamation claim between private individuals unless the alleged defamatory statement relates to a matter of public concern. *Mourning v. Allison Transmission, Inc.*, 72 N.E.3d 482, 489 n.3 (Ind. Ct. App. 2017) (citing 23 James R. Fisher & Debra H. Miller, Indiana Practice, *Personal Injury Law and Practice*, § 3:21 (2d ed. 2007) (footnotes and citations omitted) ("Private persons must also show 'actual malice' when the communication in question relates to an issue of public concern. Malice is not otherwise a required element of a defamatory action.")). Here, Vest's statement related to a private matter, not a matter of public concern; therefore, she did not need to show that Vest acted with malice. *Mourning*, 72 N.E.3d at 489.

[14] Nor was Charles required to prove damages. In an action for defamation *per se*—as opposed to defamation *per quod*—a "plaintiff is entitled to presumed damages 'as a natural and probable consequence' of the *per se* defamation.[]" *Baker v. Tremco Inc.*, 917 N.E.2d 650, 657 (Ind. 2009) (internal quotations and citations omitted).

# Conclusion

[15] Charles has not only shown prima facie error, but she has also shown that the evidence points unerringly to a conclusion that Vest committed defamation *per se* against her. The trial court's decision was contrary to law and we must reverse it.

Reversed and remanded for a determination of the amount of damages.

Baker, J., and Altice, J., concur.