

IN THE

# Court of Appeals of Indiana

Poultry & Industrial Suppliers, Inc.,

*Appellant-Defendant*

v.

Incubacol, S.A.S.,

*Appellee-Plaintiff*



FILED

Dec 23 2024, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

December 23, 2024

Court of Appeals Case No.
23A-CT-2446

Appeal from the Kosciusko Circuit Court

The Honorable Michael W. Reed, Judge

Trial Court Cause No.
43C01-1711-CT-65

**Opinion by Judge Vaidik**
Judges Weissmann and Foley concur.

**Vaidik, Judge.**

# Case Summary

[1] In 2016, Incubacol, S.A.S., a Colombian company, sued Poultry & Industrial Suppliers, Inc. ("Poultry Suppliers"), a Florida company, and CTB, Inc., d/b/a Chore-Time, an Indiana company, for strict liability (manufacturing defect), negligence, and breach of implied warranty in Florida state court. CTB moved to dismiss for lack of personal jurisdiction, and Incubacol voluntarily dismissed it from the Florida action and sued it in Indiana state court. Poultry Suppliers later moved to dismiss on grounds of forum non conveniens, claiming the case should be litigated in Indiana. The Florida trial court granted Poultry Suppliers's motion to dismiss. Incubacol then amended its complaint against CTB in Indiana to add Poultry Suppliers as a defendant.

[2] Poultry Suppliers moved for judgment on the pleadings, arguing it was entitled to judgment on all three counts under Indiana law. Incubacol filed a response arguing that Poultry Suppliers was judicially estopped from arguing that Indiana law applied to the strict-liability and negligence counts and that, in any event, Florida law—not Indiana law—applied to these counts. As for the breach-of-implied-warranty count, Incubacol argued that Poultry Suppliers didn't have its own disclaimer of warranties and couldn't "piggyback" onto CTB's disclaimer. The trial court denied Poultry Suppliers's motion, finding that judicial estoppel applied but not addressing choice of law or the breach-of-implied-warranty count.

Under Indiana's choice-of-law jurisprudence, we find that Florida law applies to the strict-liability and negligence counts and therefore affirm the trial court's denial of Poultry Suppliers's motion on these counts since they were based on Indiana law. As for the breach-of-implied-warranty count, which is governed by the Uniform Commercial Code (UCC), we find that a manufacturer's disclaimer of warranties does not run with the goods and thus each subsequent seller must make their own independent disclaimer to be protected from warranty liability. While there is an exception, it's unclear whether it applies here, so we remand for further proceedings on that count. Accordingly, we affirm in part and reverse and remand in part.

## Facts and Procedural History

Incubacol is a Colombian company involved in the poultry and egg business. In 2014 and 2015, it placed orders with Poultry Suppliers, a Florida company, for equipment to construct ten breeding houses (each house was designed to hold around 7,000 chickens). *See* Appellant's App. Vol. II p. 144. CTB, an Indiana company, manufactured the equipment, which included a limited warranty that expressly disclaimed any implied warranties, and Poultry Suppliers distributed the equipment. The equipment included an alarm control panel, called the Mark 220 Informer, which was a part of the ventilation system. The Mark 220 Informer was manufactured by a North Carolina company, Pro-Tech, Inc. CTB shipped the equipment, including the Mark 220 Informer, from Indiana, which then passed through Florida on its way to Colombia.

The equipment was installed in April 2015. Although Poultry Suppliers didn't install the equipment (its agent did), Poultry Suppliers was responsible for the final inspection and approval, which occurred in August. In December, the ventilation system in one of the breeding houses failed, resulting in the deaths of 5,500 chickens.

In 2016, Incubacol (the Colombian company) sued Poultry Suppliers (the Florida company) and CTB (the Indiana company) in Florida state court. CTB moved to dismiss for lack of personal jurisdiction, and Incubacol voluntarily dismissed it from the Florida action and sued it in Indiana state court in November 2017.

In June 2019, Poultry Suppliers moved to dismiss the Florida action on grounds of forum non conveniens. *See* Appellant's App. Vol. IV p. 20. Highlighting that Incubacol had already sued CTB in Indiana, Poultry Suppliers asserted the case should be litigated in Indiana or Colombia. The Florida trial court denied Poultry Suppliers's forum non conveniens motion, finding that Colombia was not an adequate forum. However, it did not address Indiana as an alternative forum. Poultry Suppliers appealed. The Florida Court of Appeals found that although the trial court properly found that Colombia was not an adequate forum, it failed to address "the adequacy and availability of Indiana as an alternative forum." *Poultry & Indus. Suppliers, Inc. v. Incubacol, S.A.S.*, 313 So. 3d 719, 721 (Fla. Dist. Ct. App. 2020). The appellate court therefore remanded the case to the trial court with instructions to determine whether Indiana was an adequate alternative forum. *Id.* at 723.

In May 2021, the Florida trial court dismissed the action under Rule 1.061(a) of the Florida Rules of Civil Procedure, which provides:

> An action may be dismissed on the ground that a satisfactory remedy may be more conveniently sought in a jurisdiction other than Florida when:
>
> > (1) the trial court finds that an adequate alternate forum exists which possesses jurisdiction over the whole case, including all of the parties;
> >
> > (2) the trial court finds that all relevant factors of private interest favor the alternate forum, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice;
> >
> > (3) if the balance of private interests is at or near equipoise, the court further finds that factors of public interest tip the balance in favor of trial in the alternate forum; and
> >
> > (4) the trial judge ensures that plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice.

Specifically, the Florida trial court found that Indiana was an adequate alternative forum primarily because "a nearly identical action" was pending against CTB there:

> On final balancing, every factor . . . relating to an alternative Indiana forum weighs in favor of dismissal. This consideration accounts for the minimal deference entitled to Incubacol as a foreign Plaintiff in its choice for a forum. With regard to the Indiana forum where a nearly identical action is progressing,

> [Poultry Suppliers] easily meets its burden on each element . . . . To maintain this action here when there is a nearly identical action pending closer to the evidence would prejudice [Poultry Suppliers] under the circumstances presented here, serve little-to-no interests of Florida, and burdens the Court.

Appellant's App. Vol. V p. 106; *see also id.* at 94 (the court explaining that it was concerned about "the possibility of inconsistent results" if the Indiana and Florida lawsuits proceeded).

[9] Incubacol appealed, and the Florida Court of Appeals affirmed the trial court. *See Incubacol, S.A.S. v. Poultry & Indus. Suppliers, Inc.*, 351 So. 3d 1140 (Fla. Dist. Ct. App. 2022) (mem.). Incubacol moved for a written opinion (which would've allowed it to appeal to the Florida Supreme Court), rehearing, and rehearing en banc, which were all denied in January 2023. That same month, Incubacol amended its complaint against CTB in Indiana to add Poultry Suppliers as a defendant. The complaint alleges three counts against Poultry Suppliers: breach of implied warranty, strict liability (manufacturing defect), and negligence. The counts do not state whether they are based on Indiana or Florida law. The breach-of-implied-warranty count alleges that Poultry Suppliers "impliedly warranted that the breeding house was of merchantable quality and safe and fit for its intended use." Appellant's App. Vol. II p. 132. The strict-liability count alleges that Poultry Suppliers "was a seller, distributor, wholesaler or retailer of the breeding house" and "knew, or should have known, that the Mark 220 Informer contained within the breeding house had a manufacturing defect and that the alarm system would fail." *Id.* at 133. The

negligence count alleges that Poultry Suppliers or its agents "negligently failed to note that the Mark 220 Informer was faulty and suffered from a defect. Had [they] properly inspected the breeding houses [they] would have known that the Mark 220 Informer had a cold solder joint." *Id.* at 135-36.

[10] In April 2023, Poultry Suppliers moved for judgment on the pleadings. It argued it was entitled to judgment on the pleadings on the breach-of-implied-warranty count because CTB's limited warranty, which disclaimed any implied warranties, applied to it due to privity of contract.

[11] Poultry Suppliers argued it was entitled to judgment on the pleadings on the strict-liability count because the Indiana Product Liability Act (IPLA), unlike Florida law, precludes strict-liability claims against non-manufacturing sellers like Poultry Suppliers.[1] Specifically, Indiana Code section 34-20-2-3 provides:

> A product liability action based on the doctrine of strict liability in tort may not be commenced or maintained against a seller of a product that is alleged to contain or possess a defective condition unreasonably dangerous to the user or consumer **unless the seller is a manufacturer of the product or of the part of the product alleged to be defective.**

---

[1] Unlike Indiana law, Florida law provides that every party in the distribution chain of a defective product (not just the manufacturer) may be held strictly liable. *See* Incubacol's Br. p. 33. Incubacol concedes that it cannot hold Poultry Suppliers liable under the IPLA for strict liability and negligence. *See id.* at 17 (acknowledging that its strict-liability and negligence claims are "legally barred" in Indiana), 32 (acknowledging that Poultry Suppliers does not meet the definition of "manufacturer" under the IPLA and therefore cannot be held liable for strict liability and negligence).

(Emphasis added). *See also Kennedy v. Guess, Inc.*, 806 N.E.2d 776, 780 (Ind. 2004) ("Actions for strict liability in tort are restricted to *manufacturers* of defective products."), *reh'g denied*. For purposes of Indiana Code article 34-20, "manufacturer" is defined as "a person or an entity who designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product before the sale of the product to a user or consumer." Ind. Code § 34-6-2-77(a). Poultry Suppliers argued that because it is not a manufacturer, it cannot be held liable under the strict-liability count.

[12] Finally, Poultry Suppliers argued it was entitled to judgment on the pleadings on the negligence count because the negligence count was subsumed by the strict-liability count under the IPLA and Indiana case law. In support, Poultry Suppliers cited Indiana Code section 34-20-1-1, which provides:

> This article governs all actions that are:
>
> (1) brought by a user or consumer;
>
> (2) against a manufacturer or seller; and
>
> (3) for physical harm caused by a product;
>
> **regardless of the substantive legal theory or theories upon which the action is brought.**

(Emphasis added). *See also Interstate Cold Storage, Inc. v. Gen. Motors Corp.*, 720 N.E.2d 727, 730 (Ind. Ct. App. 1999) (providing that the IPLA governs "strict liability and negligence claims"), *trans. denied*.

[13] Incubacol filed a response in June. As to the strict-liability and negligence counts, its primary argument was that because Poultry Suppliers had asserted in the Florida courts that Indiana was an adequate forum under the first factor of Florida's forum non conveniens analysis, it was "judicially estopped" from arguing that Incubacol has no remedies against it under Indiana law. Appellant's App. Vol. IV p. 3. That is, Incubacol claimed that Poultry Suppliers was "asserting a position [in the Indiana courts] that [was] inconsistent with the position that it took before the Florida courts," which "easily satisfie[s]" the elements of judicial estoppel. *Id.* at 6, 7.

[14] As an alternative to its judicial-estoppel argument, Incubacol argued that under Indiana's choice-of-law jurisprudence, the trial court should apply Florida law—not Indiana law. *See id.* at 9-14.

[15] Finally, as to the breach-of-implied-warranty count, Incubacol argued that its contract with Poultry Suppliers "has no disclaimer of implied warranties" and Poultry Suppliers can't "piggyback onto [CTB's] disclaimers of warranties." *Id.* at 14.

[16] Poultry Suppliers filed a reply, arguing that Incubacol had waived its argument that Florida law applied because "[u]p until its June 2023 response brief, Incubacol had not once questioned the fact that Indiana law applies." *Id.* at 102.

A hearing on Poultry Suppliers's motion for judgment on the pleadings was held in July 2023. The next month, the trial court denied the motion, finding that Poultry Suppliers was "[c]learly" "asserting a position before this Court that is inconsistent with the position that it took before the Florida courts." Appellant's App. Vol. II p. 194. The court explained:

> Because [Poultry Suppliers] sought and obtained a dismissal of Incubacol's claims against it in Florida based on the premise that Indiana provided an adequate alternative forum—one that provided equivalent remedies to Incubacol—[Poultry Suppliers] is judicially estopped from asserting otherwise in this action. [Poultry Suppliers] will be precluded from asserting that it does not meet the definition of a "manufacturer" as a defense to [Incubacol's] strict liability and negligence counts under IPLA.

*Id.* at 195-96. The order did not address Incubacol's alternative argument about choice of law or the breach-of-implied-warranty count.

At Poultry Suppliers's request, the trial court certified its order for interlocutory appeal, and this Court accepted jurisdiction.[2]

## Discussion and Decision

Poultry Suppliers appeals the trial court's denial of its motion for judgment on the pleadings. According to Indiana Trial Rule 12(C), after the pleadings are

---

[2] This appeal originally involved CTB, and we scheduled a joint oral argument for November 20, 2024. Shortly before the oral argument, Incubacol and CTB settled their claims, and we dismissed CTB's appeal against Incubacol. *See* Case No. 23A-CT-02446 (Ind. Ct. App. Nov. 19, 2024). We thank counsel for Poultry Suppliers and Incubacol for their presentations at oral argument.

closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. A motion for judgment on the pleadings is typically directed toward a determination of the substantive merits of the controversy. *Mourning v. Allison Transmission, Inc.*, 72 N.E.3d 482, 486 (Ind. Ct. App. 2017). "Such motions should be granted only where it is clear from the face of the complaint that under no circumstances could relief be granted." *Id.* (quotation and citations omitted). "[A] judgment on the pleadings is, in reality, a summary judgment minus affidavits and other supporting documents." *Id.* (quotation omitted).

## I. Florida law—not Indiana law—applies to the strict-liability and negligence counts under Indiana's choice-of-law principles

[20] Poultry Suppliers argues that the trial court erred in denying its motion for judgment on the pleadings on the strict-liability and negligence counts on grounds of judicial estoppel. We, however, need not address this argument. Incubacol asserts that "[e]ven if this Court accepts [Poultry Suppliers's] argument that judicial estoppel should not apply [to these counts], [we] may still affirm the trial court's decision by finding that Florida law applies to Incubacol's products liability claims against [Poultry Suppliers] under Indiana's choice of law principles." Incubacol's Br. p. 31. Incubacol acknowledges that the trial court's order is silent about choice of law but claims we "may affirm the trial court on any basis in the record, even though not on a theory used by the trial court." *Id.*; *see Robinson v. State*, 5 N.E.3d 362, 367 n.8 (Ind. 2014) ("On

appellate review, . . . a trial court judgment may be affirmed if sustainable on any basis in the record, even though not on a theory used by the trial court.").

[21] Poultry Suppliers doesn't dispute the case law that says we may affirm the trial court on any basis in the record. However, it claims that Incubacol has waived any choice-of-law argument because it raised the issue too late. In support, Poultry Suppliers cites *Sword v. NKC Hospitals, Inc.*, 714 N.E.2d 142, 146 (Ind. 1999). There, the Swords, who were Indiana residents, sued a Kentucky hospital for medical malpractice in Indiana state court. The hospital moved for summary judgment, arguing it was not liable under Indiana law. At the summary-judgment hearing, the Swords argued, for the first time, that Kentucky law applied. The trial court ruled that the Swords waived their argument that Kentucky law applied, and it granted summary judgment to the hospital.

[22] The Swords appealed, arguing that the trial court erred in applying Indiana law. Our Supreme Court explained that under the Uniform Judicial Notice of Foreign Law Act, "a party may raise a choice of law issue and may inform the trial court of the law of other states by offering evidence of such law or by asking the court to take judicial notice of such law." *Id.* at 146 (citing I.C. § 34-38-4-4). The Court reasoned that "[p]roviding the trial court with notice of the foreign law allows the court to consider whether the other state's or Indiana's law should apply." *Id.* The Court highlighted that a "prerequisite to informing the court of another state's law, however, is that 'reasonable notice shall be given to the adverse parties, either in the pleadings or otherwise.'" *Id.* (quoting

I.C. § 34-38-4-4). In the absence of such notice to the adverse party or trial court, the court presumes that the law in the other jurisdiction is substantially the same as the law in Indiana. *Id.* "In other words, if the adverse party is not given reasonable notice that the issue of another state's law will be raised, then any choice of law question is waived and the trial court presumes that all law is the same as Indiana's." *Id.*

[23] The Court concluded that the Swords did not give reasonable notice because they didn't raise the issue of Kentucky law until the summary-judgment **hearing**:

> By waiting until the summary judgment hearing, [the Swords] raised a potentially strategy-altering issue **without allowing [the hospital] any opportunity to prepare**. Providing notice for the first time at the summary judgment hearing, therefore, did not fulfill the purpose of the notice requirement.

*Id.* at 147 (emphasis added). Accordingly, the Court concluded that the trial court correctly determined that the Swords waived the choice-of-law issue.

[24] Poultry Suppliers argues that Incubacol didn't give reasonable notice here. It notes that Incubacol sued CTB in Indiana in November 2017 but didn't raise the issue of Florida law until June 2023. This is true, but Poultry Suppliers wasn't added to the Indiana action until January 2023. Until then, the only defendant in the case was an Indiana company. And although Incubacol didn't raise Florida law when it added Poultry Suppliers in January 2023, it raised the issue in its June 2023 response to Poultry Suppliers's motion for judgment on

the pleadings, which was based on Indiana law. Importantly, Poultry Suppliers had a chance to respond to Incubacol's choice-of-law argument in its reply and again at the July 2023 hearing on its motion for judgment on the pleadings. This case is unlike *Sword*, where the issue was raised for the first time at the summary-judgment hearing and the defendant had no opportunity to prepare. Because Poultry Suppliers didn't waive the choice-of-law issue, we proceed to the merits.[3]

[25]     In tort cases, Indiana choice-of-law analysis involves multiple inquiries. *Simon v. United States*, 805 N.E.2d 798, 804-05 (Ind. 2004). As a preliminary matter, the court must determine whether the differences between the laws of the states are "important enough to affect the outcome of the litigation." *Id.* at 805 (quotation omitted). If such a conflict exists, the presumption is that the traditional lex loci delicti rule (the place of the wrong) will apply. *Id.* Under this rule, the court applies the substantive laws of "the state where the last event necessary to make an actor liable for the alleged wrong takes place." *Id.* (quotation omitted). The presumption is not conclusive and "may be overcome

---

[3] Poultry Suppliers also argues that Florida law shouldn't apply under dépeçage, which is the process of analyzing different issues within the same case separately under the laws of different states. *See Simon v. United States*, 805 N.E.2d 798, 801 (Ind. 2004). According to Poultry Suppliers, because Indiana does not recognize dépeçage, the trial court can't apply "Indiana law to the claims against CTB and Florida law against [Poultry Suppliers]." Poultry Suppliers's Reply Br. p. 25. But as explained above, CTB has been dismissed from this case.

In any event, our Supreme Court has explained that although Indiana does not recognize dépeçage, the law of different jurisdictions can apply to different counts and different defendants—just not to issues within each count. *See id.*; *see also id.* at 802 n.2.

if the court is persuaded that the place of the tort bears little connection to th[e] legal action." *Id.* (quotation omitted).

[26] If the location of the tort is insignificant to the action, the court should consider other contacts that may be more relevant, "such as: 1) the place where the conduct causing the injury occurred; 2) the residence or place of business of the parties; and 3) the place where the relationship is centered." *Id.* (quotation omitted). These factors are not an exclusive list nor are they necessarily relevant in every case. *Id.* "All contacts should be evaluated according to their relative importance to the particular issues being litigated." *Id.* (quotation omitted). "This evaluation ought to focus on the essential elements of the whole cause of action, rather than on the issues one party or the other forecasts will be the most hotly contested given the anticipated proofs." *Id.*

[27] Incubacol claims that because there is a clear conflict in the laws of Indiana and Florida—Indiana law requires the defendant to be a manufacturer while Florida law provides that "every party in the distribution chain of a defective product may be held liable," *see* Incubacol's Br. p. 33—the presumption is that the traditional lex loci delicti rule (the place of the wrong) applies. Under this rule, the court applies the substantive laws of the "the state where the last event necessary to make an actor liable for the alleged wrong takes place," unless the court is persuaded that the place of the tort bears little connection to the action. Incubacol says the last event occurred in Colombia when the ventilation system failed but that Colombian law is inadequate as already determined by the Florida Court of Appeals. *See Poultry & Indus. Suppliers*, 313 So. 3d at 722

(noting that a Colombian legal expert opined that "it would be a legal impossibility to litigate these claims in Colombia because the courts there would not have jurisdiction over this type of dispute").

[28] We thus consider the following factors: (1) the place where the conduct causing the injury occurred; (2) the residence or place of business of the parties; and (3) the place where the relationship is centered. As for (1), Incubacol asserts that the manufacturing defects occurred in North Carolina and Indiana and Poultry Suppliers's negligent inspection occurred in Florida and Colombia. As for (2), Incubacol's place of business is Colombia and Poultry Suppliers's is Florida. And as for (3), Incubacol's and Poultry Suppliers's relationship is centered in Florida and Colombia. Once Colombia is removed from consideration, the common denominator is Florida.

[29] For its part, Poultry Suppliers doesn't engage in an analysis of the three factors. Instead, it quotes parts of the Florida trial court's forum non conveniens analysis as a proxy for Indiana's choice-of-law test. *See* Poultry Suppliers's Reply Br. p. 25 (quoting Appellant's App. Vol. IV pp. 116-17, 124). But the Florida trial court's primary reason for sending the case to Indiana was that "a nearly identical action" was pending against CTB there, not that Indiana has a particularly strong connection to the dispute between Incubacol and Poultry Suppliers.[4] And, in any event, a forum non conveniens analysis is not the same

---

[4] And even this reason has evaporated, as Incubacol and CTB have since settled.

as a choice-of-law analysis. When a case is dismissed on grounds of forum non conveniens, the new forum's substantive law doesn't automatically apply. Rather, the new forum applies its own choice-of-law rules to determine what substantive law applies. *See Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987) ("Choosing the applicable substantive law for a given case is a decision made by the courts of the state in which the lawsuit is pending."), *superseded in part by statute*. And under our choice-of-law rules, Florida law applies. As Incubacol points out, this makes sense here: "Indiana courts have no interest in applying Indiana law to deprive a foreign plaintiff of a cause of action against a foreign defendant." Incubacol's Br. p. 36.

[30] Because Florida law applies to the strict-liability and negligence counts, the trial court did not err in denying Poultry Suppliers's motion for judgment on the pleadings on these counts, which was based on Indiana law.

## III. We remand this case to the trial court for further proceedings on the breach-of-implied-warranty count

[31] Poultry Suppliers also argues the trial court erred in not entering judgment on the pleadings on the breach-of-implied-warranty count. The trial court's order doesn't specifically address this count. *See* Appellant's App. Vol. IV pp. 188-96. The parties agree that the UCC applies, which both Indiana and Florida have adopted. *See* Oral Arg. at 5:16, 33:30. As Incubacol explains in its brief:

> Both Florida and Indiana have adopted the Uniform Commercial Code so there is no difference in the state's laws that would

require a choice of law analysis. Indiana's law with respect to implied warranties thus applies to Incubacol's claim.

Incubacol's Br. p. 39.

[32] In Indiana and Florida, warranties based on contract are governed by the UCC. *See* I.C. §§ 26-1-2-313 (express warranty), -314 (implied warranty of merchantability), -315 (implied warranty of fitness for a particular purpose); Fla. Stat. §§ 672.313 (express warranty), 672.314 (implied warranty of merchantability), 672.315 (implied warranty of fitness for a particular purpose). Under the UCC, an express warranty can exclude or modify an implied warranty:

> [T]to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous.

I.C. § 26-1-2-316(2); *see also* Fla. Stat. § 672-316.

[33] Here, CTB, the Indiana company that manufactured the poultry system, had an express warranty that disclaimed any implied warranties:

> THIS WARRANTY CONSTITUTES CHORE-TIME'S ENTIRE AND SOLE WARRANTY AND **CHORE-TIME EXPRESSLY DISCLAIMS ANY AND ALL OTHER WARRANTIES, INCLUDING, BUT NOT LIMITED TO, EXPRESS AND IMPLIED WARRANTIES**, INCLUDING, WITHOUT LIMITATION, WARRANTIES AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR

PURPOSE SOLD AND DESCRIPTION OR QUALITY OF
THE PRODUCT FURNISHED HEREUNDER.

Appellant's App. Vol. II p. 63 (emphasis added); *see also id.* at 60, 65. Poultry Suppliers argues that CTB's disclaimer of warranties applies to it because the disclaimer "was necessarily incorporated into the sales contract [between Poultry Suppliers and Incubacol] because it is the one and only contract for CTB equipment alleged to exist in the case." Poultry Suppliers's Br. p. 46. Incubacol responds that because "[Poultry Suppliers's] contract with [it] has no disclaimer of implied warranties," it "attempts to piggyback onto CTB's disclaimers of warranties that were included in its manuals," which it cannot do. Incubacol's Br. p. 39.

[34] The parties agree they couldn't find any Indiana or Florida cases specifically addressing whether a seller can rely on a manufacturer's disclaimer of warranties, which is what Poultry Suppliers wants to do here with CTB's disclaimer of warranties. *See* Oral Arg. at 20:20, 41:52. As a result, the parties cite some federal district-court cases. One of those cases, *Florists' Mutual Insurance Co. v. Lewis Taylor Farms, Inc.*, 2008 WL 875493 (M.D. Ga. Mar. 27, 2008), *aff'd sub nom. Florists' Mut. Ins. Co. v. DL&B Enterprises, Inc.*, 322 Fed. Appx. 729 (11th Cir. 2009), cites treatises. According to one of those treatises, American Jurisprudence, "a manufacturer's disclaimer of warranties does not run with the goods so as to protect any subsequent seller of them, and thus, each subsequent seller must make their own independent disclaimer in order to be protected from warranty liability." 63 Am. Jur. 2d *Products Liability* § 697

(Oct. 2024 update); *see also* 67A Am. Jur. 2d *Sales* § 598 (Nov. 2024 update). Another treatise, The Law of Product Warranties, provides similarly, "In the usual case, a distributor or dealer must make his own disclaimer in order to be free from implied warranty liability. He cannot rely on a disclaimer used by the manufacturer even though he passes that documentation on to the ultimate buyer." 1 The Law of Prod. Warranties § 8:14 (Feb. 2024 update).

[35] The Law of Product Warranties recognizes an exception when "the ultimate buyer kn[ows] that the seller was the manufacturer's exclusive distributor and the buyer received the disclaimer directly from the seller and not from the manufacturer." *Id.* Under these circumstances, the manufacturer's disclaimer becomes part of the basis of the bargain between the buyer and the seller. *Id.* Thus, the seller is not required to republish and restate the manufacturer's disclaimer to disclaim the implied warranty himself. *Id.*; *see Graham Hydraulic Power, Inc. v. Stewart & Stevenson Power, Inc.*, 797 P.2d 835, 838-39 (Colo. App. 1990) (holding that where the buyer knew the seller was the manufacturer's "exclusive area distributor" and the buyer received the disclaimer of warranties directly from the seller and not from the manufacturer, the manufacturer's disclaimer became "part of the basis of the bargain" between the buyer and the seller and therefore the seller was not required to restate the manufacturer's disclaimer to disclaim warranty liability).

[36] We agree with the above authority. That is, a manufacturer's disclaimer of warranties does not run with the goods and thus each subsequent seller must make their own independent disclaimer to be protected from warranty liability.

Here, Poultry Suppliers didn't appear to do that. And while there is an exception, it's unclear whether Poultry Suppliers was an exclusive distributor for CTB and how CTB's warranty got passed to Incubacol. *See* Appellant's App. Vol. II p. 55; Oral Arg. at 40:31. Because the record needs further development, judgment on the pleadings is inappropriate for the warranty count.

[37] We affirm the trial court's denial of Poultry Suppliers's motion for judgment on the pleadings on the strict-liability and negligence counts but remand for further proceedings on the warranty count.

[38] Affirmed in part and reversed and remanded in part.

Weissmann, J., and Foley, J., concur.

ATTORNEYS FOR APPELLANT

Christopher J. King
Homer Bonner Jacobs Ortiz, P.A.
Miami, Florida

William A. Ramsey
Barrett McNagny LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Douglas F. Eaton
Eaton & Wolk PL
Miami, Florida