## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 18 2019, 9:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donna J. Jameson
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Valerie C. Horvath
Susan D. Rayl
Hand Ponist Horvath
Smith & Rayl
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James R. Davis,

*Appellant-Defendant,*

v.

Courtney Thompson,

*Appellee-Plaintiff.*

December 18, 2019

Court of Appeals Case No.
19A-JP-1506

Appeal from the
Johnson Circuit Court

The Honorable
Andrew S. Roesener, Judge

The Honorable
Michael T. Bohn, Magistrate

Trial Court Cause No.
41C01-1902-JP-35

**Kirsch, Judge.**

[1] James R. Davis ("Davis") appeals the dismissal of his action to establish his paternity in the child G.N., who was born less than three hundred days after Davis and Courtney Thompson ("Thompson") divorced. Davis raises two issues, which we consolidate and restate as whether the trial court's dismissal of Davis's paternity action was contrary to law.

[2] We affirm.

## Facts and Procedural History

[3] On October 23, 2013, Davis and Thompson attended a hearing on their pending dissolution case. *Tr. Vol. 2* at 6. Even though Thompson had moved out of the marital residence, she and Davis were sometimes alone together. *Id.* at 6, 10. At the time of the hearing, Davis was not sterile or impotent. *Id.* at 8. When asked at the hearing whether she was pregnant, Thompson said "no," even though both she and Davis knew that she was actually pregnant. *Id.* at 6-7, 10. Davis said nothing at the hearing to correct Thompson's misrepresentation. *Id.* at 7, 11; *Appellant's Br.* at 7, 10, 12. Their marriage was dissolved on November 5, 2013. *Tr. Vol. 2* at 6. About seven months later, on May 30, 2014, G.N. was born to Thompson. *Id.* At some point, Christopher Nunn ("Nunn") signed a paternity affidavit, claiming he was G.N.'s father. *Id.* at 8, 10.

[4] Even though they remained divorced, Davis and Thompson moved back in together from March 2015 to July 2015. *Id.* at 7. After they again separated, Davis had informally-arranged visitation with G.N. every other weekend, and

he voluntarily paid weekly child support to Thompson. *Id.* at 7. However, once Thompson remarried in August of 2017, Davis no longer saw G.N. *Id.*

[5] On February 12, 2019, Davis filed a Verified Petition to Establish Paternity, Parenting Time, Custody, and Child Support ("verified petition"). *Appellant's App. Vol. II* at 8. The same day, Nunn was named as a necessary party and was provided notice of the paternity action. *Id.* at 11-12. Among other things, Davis's verified petition alleged:

> Pursuant to Ind. Code § 31-14-7-1, a man is presumed to be a child's biological father if the child is born during the attempted marriage[1] or not later than 300 days after the attempted marriage is terminated by death, annulment or dissolution of marriage.
>
> As the marriage of the parties was dissolved on November 5, 2013 and the child was born on May 30, 2014, for a total of 206 days, Father is presumed, by statute, to be the child's biological father.

*Id.* at 8-9.

[6] The trial court heard Davis's verified petition on March 14, 2019. *Tr. Vol. 2* at 2. Nunn did not appear at the hearing because of his work obligations. *Id.* at 10. At the end of the hearing, Thompson asked the trial court to order Davis to

---

[1] We observe that in using language about Davis's "attempted marriage" to Thompson, Davis is citing section two of Indiana Code section 31-14-7-1, which was the wrong section for Davis to invoke, since the record makes clear that Davis and Thompson were actually married and later divorced. Thus, Davis's verified petition should have cited the language from section one of Indiana Code section 31-14-7-1, which we set forth later in this memorandum decision.

submit to DNA testing; Davis objected. *Id*. at 10. The trial court took the DNA request under advisement, and on March 21, 2019, it granted Thompson's request and ordered Davis to submit to DNA testing. *Appellant's App. Vol. II* at 14-15.[2] The trial court set a hearing to review the results of Davis's DNA test. *Id*. at 3-4; *Tr. Vol. 2* at 11.

[7] At a May 23, 2019 hearing, the trial court reviewed Davis's DNA test results, which showed "that there is a zero percent possibility that . . . Davis is the father" of G.N. *Tr. Vol. 2* at 13; *Appellant's Ex.* A. Thus, on May 28, 2019, the trial court dismissed Davis's verified petition. *Appellant's App. Vol. II* at 6. Davis now appeals.

## Discussion and Decision

[8] In reviewing a paternity ruling, we do not reweigh the evidence or question the credibility of witnesses. *Goodman v. State*, 611 N.E.2d 679, 681 (Ind. Ct. App. 1993), *trans. denied*. Instead, we look only to the evidence most favorable to the judgment and the reasonable inferences flowing therefrom. *Id.* If the evidence is sufficiently probative to sustain the trial court's ruling, we will not disturb the ruling. *Id*. To the extent that Davis's appeal raises questions of law, we review the trial court's ruling under a de novo standard and do not defer to the trial

---

[2] On April 15, 2019, Davis filed a motion to reconsider, which asked the trial court to vacate its ruling that ordered DNA testing, and on April 29, 2019, the trial court denied the motion to reconsider. *Appellant's App. Vol. II* at 4, 16-23.

court's legal conclusions. *In re Paternity of E.M.L.G.*, 863 N.E.2d 867, 868 (Ind. Ct. App. 2007).

[9] Because Davis challenges a negative judgment, he faces a daunting burden on appeal.

> A judgment entered against a party who bore the burden of proof at trial is a negative judgment. On appeal, we will not reverse a negative judgment unless it is contrary to law. To determine whether a judgment is contrary to law, we consider the evidence in the light most favorable to the appellee, together with all the reasonable inferences to be drawn therefrom. A party appealing from a negative judgment must show that the evidence points unerringly to a conclusion different than that reached by the trial court.

*Charles v. Vest*, 90 N.E.3d 667, 670 (Ind. Ct. App. 2017) (internal citations omitted).

[10] Davis argues that the trial court erred in dismissing his verified petition because under Indiana Code section 31-14-7-1(1), he is presumed to be G.N.'s father and that the DNA test, even though it demonstrated to a one hundred percent certainty that he is not G.N.'s biological father, does not rebut the presumption that he is G.N.'s father. Davis also argues that the paternity affidavit executed by Nunn does not rebut the presumption.

[11] "A man's paternity may only be established: (1) in an action under this article; or (2) by executing a paternity affidavit in accordance with IC 16-37-2-2.1."

Ind. Code § 31-14-2-1.  Paternity is presumed under the following

circumstances:

> A man is presumed to be a child's biological father if:  (1) the:
> (A) man and the child's biological mother are or have been
> married to each other; and (B) child is born during the marriage
> or not later than three hundred (300) days after the marriage is
> terminated by death, annulment, or dissolution; . . . (3) the man
> undergoes a genetic test that indicates with at least a ninety-nine
> percent (99%) probability that the man is the child's biological
> father.

Ind. Code § 31-34-7-1 ("the presumption statute").  This presumption may be

rebutted.

> It is possible that other evidence can constitute direct, clear, and
> convincing evidence capable of rebutting the marriage
> presumption.  A DNA test of another man which indicates a
> 99.97% probability that the man is a child's father combined with
> uncontradicted evidence that the man had sexual intercourse
> with the mother at the time the child must have been conceived is
> an additional example of the type of direct, clear, and convincing
> evidence which can rebut the marriage presumption. *See* IC 31-
> 14-7-1.

*Minton v. Weaver*, 697 N.E.2d 1259, 1260 (Ind. Ct. App. 1998), *trans. denied*.  If a

party in a paternity action requests a DNA test, a trial court must grant the

request:  "Upon the motion of any party, the court shall order all of the parties

to a paternity action to undergo blood or genetic testing.  A qualified expert

approved by the court shall perform the tests."  Ind. Code 31-14-6-1.

Davis argues that the DNA test results do not override the presumption statute because of Thompson's lie at the dissolution hearing about whether she was pregnant and Davis's acquiescence to that lie render the DNA test results and Nunn's paternity affidavit irrelevant. In support, Davis cites *JO. W. v. JE. W.*, 952 N.E.2d 783, 786 (Ind. Ct. App. 2011). In *JO. W.*, Husband filed an action to disclaim paternity. He argued that Wife committed fraud by stating in her divorce petition that there was a child born of the marriage. *Id.* In rejecting Husband's request to disclaim paternity, we noted his silence regarding paternity issues during the dissolution proceedings. Husband did not respond to Wife's divorce petition, attend the dissolution hearing, or make any attempt to rebut the presumption of paternity in Indiana Code section 31-14-7-1. The court stated that in a dissolution proceeding, a party's silence combined with the presumption of paternity statute "will establish paternity." *JO. W.*, 952 N.E.2d at 786 (citing *Cooper v. Cooper*, 608 N.E.2d 1386, 1387 (Ind. Ct. App. 1993)). In *Cooper*, we stated "A child born during a marriage is presumed legitimate. In a divorce proceeding, silence and this presumption will establish paternity." *Id.* Relying on *JO. W.*, Davis argues that the combination of the presumption statute, Thompson's lie during the dissolution hearing about whether she was pregnant, and Davis's failure to contest that lie created an unassailable presumption of paternity in him. Davis states: "A judgment was not needed to establish [Davis's] paternity in G.N. as his paternity was established by law." *Appellant's Br.* at 10.

[13]     We reject Davis's claim that his paternity was established by the presumption statute. *JO. W.* is distinguishable. In *JO. W.*, unlike this case, Husband was denying paternity. We found that his silence and his failure to contest the allegations in Wife's divorce petition undermined his efforts to disclaim paternity. *JO. W.*, 952 N.E.2d at 786.

[14]     Here, Davis is trying to use his deception at the dissolution hearing to establish paternity in himself and asks us to ignore the facts that DNA test established that he is not G.N.'s father and that Nunn filed a paternity affidavit.[3] This is curious reasoning as Davis asks us to find that paternity lies with him based on Thompson's false statement to the dissolution court, which Davis abetted. Davis points us to nothing in law or equity that supports such a result. Therefore, we reject Davis's claim.[4] The trial court's dismissal of Davis's verified petition was not contrary to law.

[15]     Affirmed.

Bailey, J., and Mathias, J., concur.

---

[3] Davis also argues that Nunn's affidavit did not establish paternity in Nunn because Nunn did not appear at the hearing on Davis's verified petition. This argument is waived for lack of cogent argument and failure to cite relevant legal authority. *See Thomas v. Orlando*, 834 N.E.2d 1055, 1061 (Ind. Ct. App. 2005); Ind. Appellate Rule 46(A)(8)(a).

[4] We also deny Thompson's request that Davis pay her appellate attorney fees.