

**FILED**

Jul 11 2019, 8:08 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Ross G. Thomas
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert R. Coulter, III and Kerri E. Coulter,, | July 11, 2019 |
| *Appellants-Respondents,* | Court of Appeals Case No. 18A-MI-957 |
| v. | Appeal from the Rush Superior Court |
| Philip J. Caviness, Rush County Prosecutor, on behalf of State of Indiana, | The Honorable Brian Hill, Judge |
| *Appellee-Petitioner.* | Trial Court Cause No. 70D01-1611-MI-358 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellants-Respondents, Robert Coulter III (Coulter) and Kerri Coulter (Kerri) (collectively, the Coulters), appeal from the trial court's grant of summary judgment in favor of Appellee-Petitioner, Rush County Prosecutor Philip Caviness (Caviness), on his Complaint for civil forfeiture.

We affirm in part, reverse in part, remand for further proceedings, and remand for entry of summary judgment.

# ISSUE

The Coulters present us with three issues on appeal, which we consolidate and restate as: Whether the trial court properly granted summary judgment in favor of Caviness on his Complaint for civil forfeiture of the Coulters' property.

# FACTS AND PROCEDURAL HISTORY

On October 3, 2016, Detective Alex Shaver (Detective Shaver) of the Rushville Police Department was contacted by an employee of the Rushville branch of Wells Fargo Bank on a report that Coulter had come to the bank that morning and exchanged $9,000 in $20 bills for $100 bills. The currency Coulter exchanged emitted a strong odor that Detective Shaver recognized as that of raw marijuana. Detective Shaver was also aware through his training and experience as a narcotics investigator that $20 bills are the most common unit of currency used in narcotics transactions. Detective Shaver retrieved surveillance camera footage from the bank showing Coulter arriving at the bank that morning in his black Chevrolet pickup truck.

On October 4, 2016, Detective Shaver retrieved the Coulters' trash after they had set it outside of their home for collection. A search of the trash netted mail belonging to Kerri, marijuana stems, leaves and seeds, and a large pair of scissors with marijuana plant and residue on it. Detective Shaver applied for and was granted a search warrant for the Coulters' home. On October 4, 2016, the warrant was executed. Officers found Coulter and Kerri at home with their minor children. After having been provided with his *Miranda* advisements, Coulter was asked if there was anything illegal in the home and was asked to show them where the marijuana was. Coulter replied, "Everything is in the safe." (Appellants' App. Vol. II, p. 35).

Coulter directed the officers to the first-floor master bedroom closet, where a safe was located. In the safe, the officers found a gym bag containing three and one-half pounds of marijuana, some of which was packaged in smaller bags, two digital scales, two boxes of Ziplock baggies, six cell phones, and a pill bottle containing marijuana seeds. Also found in the safe was $22,907 in cash, a Dell laptop computer, and a Nikon camera. Further search of the master bedroom yielded a handwritten ledger and a Toshiba laptop computer that were both located on top of a desk. In an upstairs bedroom which was being used by Kerri's brother, the officers found in a dresser a box with the brother's name on it, drug use paraphernalia, and a bag of marijuana. In the upstairs bedroom the officers also located a Ruger rifle. Evidence of a marijuana growing operation was located in the Coulters' garage, including starter trays, potting soil, fertilizer, a tarp with trimmed marijuana leaves on it, and a large drum

containing marijuana clippings. Coulter's black Chevrolet truck, the $22,907 in cash, the two laptops, the Nikon camera, and the rifle found in the upstairs bedroom were seized as part of the criminal investigation.

[7] Coulter was transported to the Rush County jail, where he was interviewed by Detective Shaver. Coulter admitted that he had been growing marijuana for eighteen years and that he had recently harvested a crop that he had grown in an open field close to his home. Coulter also admitted that he went to Indianapolis once every two weeks to purchase one-to-two pounds of marijuana. Coulter had approximately 130 customers and estimated that he generated an income of $800 per week dealing marijuana.

[8] On October 7, 2016, the State filed an Information, charging Coulter with corrupt business influence, a Level 5 felony; dealing in marijuana, a Level 6 felony; maintaining a common nuisance, a Level 6 felony; and possession of marijuana, a Class B misdemeanor. On October 18, 2017, Coulter pleaded guilty to dealing in marijuana as a Level 6 felony. In exchange, the plea agreement provided that Coulter would receive a two-year sentence, all suspended to probation. In addition, all other charges pending against Coulter and Kerri were dismissed. On the same day, the trial court accepted Coulter's plea and sentenced him according to the terms of the plea agreement.

[9] On November 15, 2016, Caviness filed a Complaint seeking civil forfeiture of the property seized after the search of the Coulters' home, alleging in relevant part as follows:

5. Over a period of time, [Coulter] has participated in, constructed and continued to operate a "corrupt enterprise" through a pattern of racketeering activity, as defined by statute, in that he, *along with other unknown and unnamed co-conspirators, has engaged in conduct in the furtherance of an enterprise* in which he cultivated illegal narcotics/drugs, possessed illegal narcotics/drugs, and/or transported illegal narcotics/drugs and/or sold the illegal narcotics/drugs.

6. [Coulter] *and other unnamed persons have continued to engage in said pattern of racketeering activity*, deriving therefrom, profits, property, and income, obtained with the funds and with the profits from the enterprise, and said income, profits, and property, are subject to forfeiture pursuant to the Indiana Racketeer Influence Corrupt Organization Statute, Indiana Code Sec. § 34-24-2-1 et seq. The Defendant should be ordered by the Court to immediately list and identify all of their assets of whatever kind, and the location and holder of all such assets, and report said information to the Court at once, serving a copy thereof on the Plaintiff.

7. [Coulter] acquired and/or utilized certain property including the property listed in Paragraph 1 of this Complaint *to further his criminal actions*. Said property, seized by the Plaintiff's agents on or about October 4, 2016 is subject to seizure and forfeiture pursuant to [I.C. §] 34-24-2 et seq.

(Appellants' App. Vol. II, p. 7) (emphasis added).

On January 17, 2018, Caviness filed a motion for summary judgment in which he alleged the property was subject to forfeiture "under both Indiana's forfeiture and RICO statutes." (Appellants' App. Vol. II, p. 18). Caviness argued that a "person commits the crime of corrupt business influence if he, 'through a pattern of racketeering activity, knowingly or intentionally acquires or maintains, either directly or indirectly, an interest in or control of property or an

enterprise.' Indiana Code § 35-45-6-2." (Appellants' App. Vol. II, p. 20).

Caviness further asserted that Coulter

> unquestionably engaged in a pattern of racketeering activity through his growing, purchasing, and selling of marijuana over a period of eighteen (18) year[s]. The items seized by law enforcement were either used in the course of, intended for use in the course of, derived from, or realized through his illegal conduct.

(Appellants' App. Vol. II, p. 21). Caviness designated in support of his motion the pleadings from Coulter's criminal case, the sworn affidavits filed in support of the search warrant for the Coulters' home, sworn incident reports detailing the search, and photographs taken from the bank surveillance footage showing Coulter's use of his truck on October 3, 2016.

[11] In their response in opposition to summary judgment, the Coulters designated, among other evidence, the deposition testimony of Detective Shaver. The Coulters argued that a genuine issue of material fact existed regarding whether Coulter had used his truck in the furtherance of any crime because Detective Shaver testified at his deposition that he had no "specific direct knowledge" that the currency Coulter brought to the bank on October 3, 2016, was "proceeds of drug activity." (Appellants' App. Vol. II, pp. 85-86). The Coulters also designated statements from their Wells Fargo bank account which they argued showed that the couple had income from legitimate business ventures around the same time period as the October 3, 2016, currency exchange. Regarding the other property seized, apart from the currency, the Coulters argued that

Caviness had failed to make his *prima facie* case that no issues of fact were left to be resolved because he had failed to specifically show how the laptops, camera, and rifle had been used to facilitate the crime of dealing marijuana. Regarding the seized currency, the Coulters argued that Caviness did not make a *prima facie* case for summary judgment because there was nothing linking the currency to Coulter's drug dealing, such as an admission by Coulter that the money was the proceeds from sales, no evidence of any controlled buys using the seized currency, and no evidence that he had actually sold marijuana to the people listed on the ledger found in his bedroom. On March 27, 2018, the trial court granted Caviness' motion for summary judgment without a hearing and without entering any findings of fact or conclusions of law.

[12] The Coulters now appeal. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[13] Summary judgment is appropriate if the designated evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). We review both the grant or denial of summary judgment *de novo* and apply the same standard as the trial court. *Kerr v. City of South Bend*, 48 N.E.3d 348, 352 (Ind. Ct. App. 2015). The party moving for summary judgment bears the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Sargent v. State*, 27 N.E.3d

729, 731 (Ind. 2015). "Summary judgment is improper if the movant fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact." *Id.* at 731-32. "All disputed facts and doubts as to the existence of material facts must be resolved in favor of the non-moving party." *Kerr*, 48 N.E.3d at 352. The non-moving party has the burden on appeal to persuade us that the trial court's grant of summary judgment was erroneous, but we will carefully assess the trial court's decision to ensure that the non-moving party was not improperly denied his day in court. *Id*.

[14] In addition, we note that the trial court did not enter findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com. Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 48 (Ind. Ct. App. 2004). However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review. *Id.*

## II. *Indiana's RICO Statute*

[15] In his Complaint, Caviness alleged that the Coulter's property was subject to forfeiture under both the civil forfeiture statute, I.C. § 34-24-2-1 *et seq* and Indiana's Racketeer Influenced and Corrupt Organizations (RICO) statute, I.C. § 34-24-2-2 *et seq*; I.C. § 35-45-6-2. However, the trial court granted summary judgment based solely on the state RICO statute, and, thus, our analysis will entail that statute only. Indiana Code section 34-24-2-2(a) provides, in relevant part, that

[t]he prosecuting attorney in a county in which any of the property is located may bring an action for the forfeiture of any property:

(1) used in the course of;

(2) intended for use in the course of;

(3) derived from; or

(4) realized through;

conduct in violation of [I.C. §] 35-45-6-2.

Indiana Code section 35-45-6-2, in turn, criminalizes the engagement in corrupt business influence. A 'corrupt business influence' is defined, in relevant part, as a person "who through a pattern of racketeering activity, knowingly or intentionally acquires or maintains, either directly or indirectly, an interest in or control of property or an enterprise[.]" I.C. § 35-45-6-2(2). Thus, this section of the RICO statute criminalizes acquiring or maintaining an interest or control in property through a pattern of racketeering, without necessarily being engaged in or associated with an enterprise. *Id*. A 'pattern of racketeering activity' is defined as "engaging in at least two (2) incidences of racketeering activity that have the same or similar intent, result, accomplice, victim, or method of commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated incidents." I.C. § 35-45-6-1(d). Finally, 'racketeering activity' means "to commit, to attempt to commit, to conspire to commit a violation of, or aiding and abetting a violation of any of the following . . . dealing in marijuana, hashish oil or salvia." I.C. § 35-45-6-1(e)(34).

## II. *Prima Facie Showing and Genuine Issues of Material Fact*

We begin our analysis regarding Caviness' *prima facie* showing by noting that he proceeded under different RICO theories in his Complaint than he did in his motion for summary judgment. In his Complaint, Caviness alleged that Coulter had acted in concert with "other unknown and unnamed co-conspirators" and "engaged in conduct in furtherance of an enterprise" of dealing drugs. (Appellants' App. Vol. II, p. 7). This allegation of operating a criminal enterprise is referred to as "said pattern of racketeering" and "his criminal actions" in subsequent paragraphs of the Complaint. (Appellants' App. Vol. II, p. 7). An 'enterprise' is defined in the RICO statute in relevant part as "a union, an association, or a group, whether a legal entity or merely associated in fact." I.C. § 35-45-6-1(c)(2). Thus, a RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Miller v. State*, 992 N.E.2d 791, 794 (Ind. Ct. App. 2013) (quotation omitted), *trans. denied*.

Caviness did not assert in his motion for summary judgment that Coulter had engaged in racketeering as part of a group of persons. Rather, he alleged that no genuine issue of material fact existed that Coulter had "unquestionably engaged in a pattern of racketeering activity through his growing, purchasing, and selling of marijuana over a period of eighteen (18) year[s]." (Appellants' App. Vol. II, p. 21). This being noted, the Coulters do not argue that the RICO statute does not apply to a one-man drug dealing operation, nor do they claim

in their responsive summary judgment pleadings that Caviness had improperly varied his claims for purposes of his summary judgment motion.

[18] We also observe that Caviness argued on summary judgment that, because the trial court had found that probable cause existed for a charge of corrupt business influence and Coulter had pleaded guilty to dealing marijuana, Coulter was collaterally estopped by Indiana Code section 34-24-2-7[1] from relitigating those issues on summary judgment. However, the charge for which probable cause was found was an allegation that Coulter used proceeds from his marijuana dealing to establish an "enterprise," a theory that Caviness did not pursue in his summary judgment motion. (Appellants' App. Vol. II, p. 23). Regardless, for collateral estoppel to apply, a final judgment on the merits in a court of competent jurisdiction had to have been rendered on the fact or issue. *Nat'l Wine & Spirits, Inc. v. Ernst & Young, LLP*, 976 N.E.2d 699, 704 (Ind. 2012). A finding of probable cause determination is not a final judgment of an issue or fact. In addition, the fact that Coulter pleaded guilty to dealing marijuana did not relieve the State from making a *prima facie* showing for summary judgment that an interest in, or control of, the property at issue was acquired or maintained by Coulter through that dealing activity, as required by the RICO statute. *See* I.C. § 35-45-6-2(2); *see also Flinn v. State*, 563 N.E.2d 536, 541 (Ind. 1990) ("[O]nce a pattern of racketeering activity has been established, it must be

---

[1] I.C. § 34-24-2-7 provides as follows: "In any action brought under this chapter . . ., the principle of collateral estoppel operates to bar relitigation of the issues previously determined in a criminal proceeding under IC 35-45-6-2."

connected to an interest in or control of . . . property or an enterprise, to constitute the offense of corrupt business influence.").

## A. *Truck[2]*

[19] The evidence designated by Caviness showed that Coulter engaged in marijuana growing and dealing for approximately eighteen years, had 130 active clients, and made approximately $800 per week from his marijuana dealing activities. On October 3, 2016, he drove his black Chevrolet truck to the bank and presented $9,000 in $20 bills to be exchanged for $100 bills. Caviness designated evidence that $20 bills are the most common unit of currency used in the narcotics trade. Although Caviness' designated evidence showed that Coulter claimed to be engaged in some legitimate business activity also, Kerri told investigators that Coulter had not been working a great deal prior to his arrest. Coulter's control of his truck had to be maintained with insurance and fuel, costs which required him to expend money on an ongoing basis. Thus, we conclude that the designated evidence established a *prima facie* showing that Coulter knowingly maintained control, at least indirectly, of his

---

[2] In his Complaint, Caviness alleged that the truck was also subject to seizure under Indiana Code section 34-24-1-1(a)(1). That portion of Indiana's civil forfeiture statute pertaining to the forfeiture of vehicles was deemed unconstitutional in litigation in the Southern District of Indiana. *See Washington v. Marion Cty. Prosecutor*, 264 F.Supp.3d 957, 979-80 (S.D. Ind. 2017). The matter is now on remand from the Seventh Circuit for consideration of recent amendments to the statute. *See Washington v. Marion Cty. Prosecutor*, 916 F.3d 676, 679-80 (7th Cir. 2019). This litigation does not impact the present case because the trial court did not grant summary judgment under the civil forfeiture statute.

truck through his drug dealing activities and that he used his truck in the course of his drug dealing when he drove it to the bank on October 3, 2016.

[20] The Coulters, in response to this prima facie showing, designated evidence in the form of Detective Shaver's deposition testimony that the State did not have "any specific direct knowledge" that the cash Coulter sought to exchange on October 3, 2016, was derived from drug dealing. (Appellants' App. Vol. II, p. 85). Caviness does not address this evidence on appeal. As Coulter's act of driving his truck to exchange the currency was the only use of the truck supported by the evidence,[3] we conclude that a genuine issue of material fact existed regarding whether Coulter acquired or maintained control of his truck through his drug dealing activity and that this issue precluded summary judgment as to Coulter's truck. Accordingly, we reverse the trial court's grant of summary judgment as to the truck and remand for further proceedings on that property. *See Feitler v. Springfield Enters., Inc.*, 978 N.E.2d 1160, 1170 (Ind. Ct. App. 2012) (remanding where summary judgment grant was inappropriate due to existence of genuine issues of material fact), *trans. denied*.

## B. *Property Found in the Safe*

[21] When his home was searched by law enforcement on October 4, 2016, and after receiving his *Miranda* advisements, Coulter was asked if there was anything illegal in the home and to show the officers where the marijuana was. Coulter

---

[3] Coulter told investigators that he went to Indianapolis approximately twice a month to purchase marijuana, but the evidence is silent as to his mode of transportation for these trips.

replied, "Everything is in the safe." (Appellants' App. Vol. II, p. 35). In the safe Officers found marijuana, $22,907 in cash, the Dell laptop computer, and a Nikon camera. Contrary to the Coulters' assertions on appeal, Coulter's statement to the officers established a link between the property in the safe and his drug dealing activity and, thus, made a *prima facie* showing that the cash, laptop, and camera found there were acquired or maintained by Coulter through his drug activity. Once Caviness made this showing, the burden shifted to the Coulters to show the existence of a genuine issue of material fact. *See Sargent*, 27 N.E.3d 731-32. The Coulters did not designate any evidence which created a genuine issue of material fact regarding this property, such as an affidavit on his part refuting that the property was related to his drug dealing activities. The Coulters' designation of bank account records showing money flowing through their bank account, without more, does not create a link between any cash withdrawn from the bank and the cash found in the safe. As such, we conclude that the trial court properly granted summary judgment to Caviness on the property found in the safe.

## C. *Property Found Outside the Safe*

Caviness also sought summary judgment on the forfeiture of the Toshiba laptop found on a desk in the master bedroom and a rifle found in an upstairs bedroom. In support of his case for forfeiture of the laptop, Caviness designated evidence that the laptop was found next to a handwritten drug client ledger on the desk. However, without more, we conclude that the simple fact that the laptop was found in close proximity to the client ledger did not

establish a *prima facie* showing that the laptop was acquired or maintained through Coulter's drug dealing activity.[4] Regarding the rifle, Caviness designated no evidence affirmatively showing that it was linked in any way to Coulter's drug dealing, let alone acquired or maintained through those activities. Rather, undisputed evidence designated by Caviness showed that the bedroom where the rifle was located was being used by someone else. Because Caviness did not pursue any theory of group drug dealing activity in his summary judgment pleadings, we conclude that the trial court erred when it granted summary judgment to Caviness on the Toshiba laptop and the rifle, and we remand for entry of summary judgment on that property in favor of the Coulters. *See Sargent v. State*, 27 N.E.3d 729, 733 (Ind. 2015) (reversing and remanding for entry of summary judgment in favor of property owner in civil forfeiture case where the State failed to make *prima facie* showing and material facts were not in dispute).

## CONCLUSION

[23] Based on the foregoing, we conclude that no genuine issues of material fact existed regarding the $22,907, Dell laptop, and Nikon camera found in the safe and that summary judgment in favor of Caviness was appropriately granted as to that property. We conclude that a genuine issue of fact was left to be

---

[4] The civil forfeiture statute provides for the admission into evidence of property found near or on a person committing an enumerated offense as *prima facie* evidence the property was used to facilitate a violation of, or was proceeds of, the violation of a criminal statute for purposes of proving forfeiture is merited. *See* I.C. § 34-24-1-1(d). Indiana's RICO statute has no such evidentiary presumption.

resolved regarding the truck and reverse and remand for further proceedings. We also conclude that Caviness failed to make a *prima facie* case regarding the Toshiba laptop and the rifle, and, therefore, we remand for entry of summary judgment in favor of the Coulters as to those two items.

[24] Affirmed in part, reversed in part, and remanded for further proceedings as to the truck and with instruction for entry of summary judgment in favor of the Coulters as to the Toshiba laptop and the rifle.

[25] Bailey, J. and Pyle, J. concur