## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 31 2020, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANTS PRO SE | ATTORNEY FOR APPELLEE |
|---|---|
| Kurt Disser | Brad A. Catlin |
| Sabrina Graham | Price Waicukauski Joven & Catlin, LLC |
| Brownsburg, Indiana | Indianapolis, Indiana |

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kurt Disser and Sabrina Graham, | March 31, 2020 |
| *Appellants-Plaintiffs/Cross-Appellees,* | Court of Appeals Case No. 19A-SC-1768 |
| v. | Appeal from the Hendricks Superior Court |
| | The Honorable Mark A. Smith, Judge |
| Jennifer Cox, | The Honorable Tammy Somers, Magistrate |
| *Appellee-Defendant/Cross-Appellant* | The Honorable Michael Manning, Magistrate |
| | Trial Court Cause No. 32D04-1807-SC-1608 |

**Crone, Judge.**

# Case Summary

Kurt Disser and Sabrina Graham (collectively "Appellants") filed a small claims action against Jennifer Cox, alleging that she made defamatory statements about them regarding Cox's unsuccessful 2016 campaign for a school board seat and 2018 township primary elections. Cox filed a motion to dismiss, asserting that Appellants' lawsuit violated Indiana's anti-SLAPP (strategic lawsuit against public participation) statute. The trial court denied Cox's motion. After a bench trial, the court entered judgment in favor of Cox, finding that Appellants had failed to meet their burden of proof. On appeal, Appellants argue that the trial court's judgment is contrary to law. On cross-appeal, Cox argues that the trial court erred in denying her motion to dismiss. We affirm the trial court in all respects.

# Facts and Procedural History[1]

Appellants are domestic life partners who live in an unincorporated region north of Brownsburg. Both were active participants in a campaign to defeat Brownsburg's attempted annexation of that area. In 2013, Graham established the Brownsburg North Group Against Annexation ("BNGAA"). Disser was the treasurer of Fight Against Brownsburg Annexation ("FABA"), a political action committee ("PAC") formed as a "bookkeeping vehicle" to "track

---

[1] We agree with Cox's assertion that Appellants' statement of facts is inappropriately argumentative and does not state facts in accordance with the applicable standard of review as required by Indiana Appellate Rule 46(A)(6)(b).

donations and expenditures" for the anti-annexation campaign. Tr. Vol. 2 at 97, 98. Graham also operated an anti-annexation website, on which she requested donations for FABA.

[3]   In 2016, Cox ran against two other candidates for a seat on the Brown Township school board. On October 10, 2016, Cox received an email from Disser that reads in relevant part as follows:

> Jenna,
>
> This is Kurt Disser. I am the treasurer of the Fight Against Brownsburg Annexation PAC which represents about 3000 [B]rown [T]ownship residents. I would appreciate if you would respond to this email as soon as possible. Our group is trying to determine who to support for school board.
>
> I understand that you live outside of the annexation.
>
> I have spoken with several in our group and we are trying to decide whom to endorse for school board.
>
> You may not even be interested in groups [sic] support; since after all you have not contacted us; but if you are interested in our support, we want to know if you are willing to sign a petition in opposition to annexation.
>
> While I do understand that you live out side [sic] of the annexation territory, signing a petition in opposition to annexation will only help to verify if you oppose the annexation. Would you be willing to sign a petition in opposition of [sic] annexation?
>
> And I know it is a bad time to push for donations but we have had several people that live outside of our annexation territory

donate because they are aware of the fact that if we get annexed they will be next; so if you are ever so inclined to donate, it would be greatly appreciated.

If annex occurs, revenue loss will be experienced by all taxing bodies except the Town: (this loss will occur because the tax dollars from the property owners in the annexation territory will be redistributed.)
Approx. yearly revenue loss per taxing body
Brown Township $30,000
The public library $30,000
The County $81,000,
The fire territory $81,000
The School $400,000
(These estimates were provided in 2015 by the Deputy County Auditor.)

Please send an email response as soon as you can and I would be interested in speaking directly to you in the coming days if possible.

Ex. Vol. at 33. Cox did not respond to Disser's email.

[4] On October 18, 2016, Graham sent over two dozen recipients an email that reads in relevant part as follows:

To all from the Brownsburg North Group Against Annexation

This message is in reference to the upcoming local elections.

….

We are mainly concerned about the Brown Township seat because Jenn Cox is one of the three candidates; she is pro-annexation and her actions seem to indicate that she is actually

against the School.

We are concerned that if we do not band together to support one of the two remaining candidates running for the Brown Township school board seat that our votes will end up being split and possibly result in a win for Jenna; which we absolutely do not want.

The other two candidates are Eric Hylton and Marvin Ward, while I think they are both good candidates the consensus is to endorse Eric Hylton. This decision was made after I spoke to both Eric and Marvin and discussed the information that was provided by these individuals with several other remonstrators.

….

If you are willing to have signs for [Hylton and another candidate in another township] placed in your yard, you can stop by my house and pick up signs ….

Please forward this information to all concerned parties. Thank you for your time.

*Id.* at 96-97.

Cox lost the election to Hylton. Over a week later, she posted an entry to her campaign blog that reads in pertinent part as follows:

Now the question that crossed my mind was why I lost in my own township? I will be honest, I don't like to lose. I am a competitor through and through. If I thought I lost fairly to an opponent that ran an honest campaign, out campaigned me or out financed me, I would be okay with the lose [sic] and the humility required in the defeat would be easier. But if I felt in anyway [sic] there was manipulations, lies or deceit in the race, I

would want to find out why.

I know without a doubt I out campaigned Eric Hylton on the ground. I am pretty sure he raised and spent more money than me. Those 2 factors pretty much cancelled each other out. But the last issue on honesty in the campaign race was the issue that cost me the race. Up until Oct. 10, 2016 the prospect of a win was looking good, but when a PAC called Fight Against Brownsburg Annexation sent out an email to all 3 Brown Township Candidates the whole face of my campaign changed. "This email" contained 3 things: 1) Possible endorsement based on a response to them regarding the annexation. 2) Ask to sign their petition 3) Solicitation for a donation. Click Here to read my blog post on it and the email. So yes the last issue on the integrity of me as a candidate was being raised and at that moment dirty politics entered a school board race.

I am going to stop here and let that sink in for a moment…dirty politics in a school board race in Brownsburg, Indiana.

I am very upfront about why I didn't respond to the email from Kurt Disser.

My reasons for not responding were simple. Fight Against Brownsburg Annexation P.A.C just committed an illegal/unethical act. It's called Pay to Play. Now of course nobody wanted to believe it. BRFR[2] put it up on their page and some residents knew immediately it was bad/illegal/wrong/unethical, but others didn't understand the implications and what the PAC was trying to do. Let me spell it out. The PAC was trying to influence this election…a school board race. It committed an illegal and unethical act by asking

---

[2] BRFR (Brownsburg Residents for Fiscal Responsibility) was an organization that advocated as a PAC against a Brownsburg school referendum in 2015, dropped its PAC status, and endorsed Cox's school board candidacy in 2016. Tr. Vol. 2 at 57, 207.

for donations simultaneously informing the candidates we could get an endorsement from the PAC if we did exactly what they asked. They were trying to make themselves relevant and make sure only candidates that supported their agenda were elected. They wanted to crucify me because I didn't support the referendum and I didn't support giving their PAC Brown Township Tax money to fight against the annexation (this came from a board meeting in 2015). Now how do I know this because on Oct. 26, 2016, 16 days after the initial email and 13 days before the election they sent out an email [i.e., Graham's October 18 email[3]] to all those living in the Annexed areas an email [sic]. I experienced an October surprise in a Brownsburg School Board race. Click here and scroll down towards bottom to read an email that was forwarded to me from a friend. Oh was I angry! I knew right then that winning was going to be hard and I wasn't sure how I was going to connect to those voters. I wasn't even sure I wanted to address it. Looking back that may have been a mistake. Maybe I should have taken a page from the Crane and Clark campaign and left a letter on the doorstep of all those in the annexed area exposing the lies of this group. In the end, I tried to focus on my campaign, my message and go HI [sic] while they went LOW. Let's just say the voters believed the email, they followed the PAC's suggested strategy and I lost the school board race. My objectivity ends there.

So the next part of my post is me not being very objective, but instead I will address the lies. Actually I am being quite snarky this [sic] part of my post.

….

[T]he PAC email was sent to an Asst. Prosecutors [sic] in Hendricks County and it was determined that yes it was illegal

---

[3] One of Cox's friends forwarded Graham's email to Cox on October 26. Ex. Vol. at 99.

for the PAC to solicit and for [Hylton] to even engage with them. The tricky part is determining if money exchanged hands and most don't get involved with something on this small scale ….

Regardless if Hylton or the PAC ever gets in trouble for this, I just wanted to leave my explanation here on my blog about why I believe I lost the school board race. Yep that endorsement of lies – I am just gonna leave it here.…

In the end what bothers me the most are the 2 lies said in the endorsement letter, not as much the Pay for Play. The Pay for Play did happen, even if [Hylton] wants to be in denial about it. I don't like anyone believing I am against the schools and totally lying about my thoughts on the annexation.…

Now this might upset some friends, but I am actually not pro-annexation. I am against forced annexation. I don't like the way the town handled it.… I am not concerned about the "money lost" to the schools because with growth comes a rise in AV and this would offset any amount the schools may have lost.…

So here are my thoughts. If the stupid PAC would have just left off the donation part of their email, I would have responded and who knows I might be the candidate being sworn in January to serve on the school board. But probably not because people like Kurt Disser and his girlfriend will disparage anyone who stands in their way. They have lied to the public and have made the annexation be against the schools and every other entity that will "lose" money.

*Id.* at 5-8 (underlining omitted).[4]

---

[4] At trial, Cox's counsel stipulated that Cox "made the same kinds of comments on a [local] radio show …." Tr. Vol. 2 at 83.

On May 6, 2018, two days before the primary election, Cox made a public post on Facebook that reads in pertinent part as follows:

> BROWN TOWNSHIP VOTERS BE AWARE.
>
> Brownsburg has a political mafia in the name of the Anti-North Annexation PAC leaders Sabrina Graham and her side kick boyfriend Kurt Disser.
>
> They sent out this email to all the Brown Township contacts they have. DON'T FALL FOR IT. They want people in office they can control. THEY WANT CONTROL.

*Id.* at 35. The email, sent by Graham, urged recipients to vote on May 8 and forward the email to "all [their] Hendricks County Contacts[,]" listed the candidates for local township races whom Graham supported "as leader of the Brownsburg North Group Against Annexation," and stated, "It is important to remember elections have consequences especially at the local level." *Id.* at 37. In her Facebook post, Cox stated, "Our elections do have consequences that is the only truthful thing Sabrina Graham stated in her email." *Id.* at 35.

Cox also made the following comments in replying to responses to her post:

> I have no skin in this race. When I ran for school board neither of the men running voted for me—they aren't "friends", but what I see happening sickens me that this PAC is trying to control our Township board with lies and "endorsements". Why give them this power?
>
> ....
>
> [Graham] has no integrity and will do anything and say anything

to put the people she wants in place out of spite when she doesn't get her way. Period.

….

[W]hen I ran for school board [Graham] sent out a scathing email to her Brownsburg contacts stating I was against her school and was for the both [sic] annexation. Neither one was true and she came to this conclusion because I wouldn't acknowledge nor turn in their Endorsement questionnaire. There is your No Integrity. She lies. She knows it and people have accepted "her facts" as truth.

Just a little info: When they sent out these endorsement letter [sic] for candidates they also include a mention for donations. They did this to all school board candidates. That is illegal given they are a PAC and it is called Pay to Play. Basically asking for donations for their endorsement. I didn't answer it because it was an illegal email. If they just would of [sic] asked, what is your position, I would of [sic] answered it. Did they? Nope.

They get away with it because prosecutors have bigger fish to fry than a lowly PAC president [sic] committing illegal campaign laws.

….

[Assistant prosecutor] Delp knew about it and chose not to pursue it for whatever reason. It doesn't make what she did legal, it just means it wasn't high ranking enough to go after.

….

Now Sabrina Graham and Kurt Disser are sticking their nose in as a PAC into board township elections.…

….

[I]f you think my spite is about the lies spread about me by this group 2 years ago…well maybe it has more to do with warning the voting public what is truly going on.…

….

Sir, I am just making people aware of these "endorsements" by this PAC. They have done it before to others and they are doing it now in this election for township board and trustee position [sic]. As I said to someone who asked, I live in BT I am very much concerned by the repeated actions of this PAC to get involved in every election now by targeting individuals they don't want on the board for their own personal gain.

….

Currently, it seems the money raised is not just to fight the town on the annex, but influence local township and town races[.]

….

We will have to disagree. I have a big problem with a PAC who was supposed to be about the annexation start smearing candidates and flat out lying about them. But they [sic] if you are cool with that…enjoy having a locked up govt even on the local level. And I don't see the way Brownsburg is moving as wrong. What I see this PAC doing is not stepping into progression of a community.

*Id*. at 45-65.

[8]     In July 2018, Appellants filed a pro se notice of claim against Cox in small claims court. The notice alleged that

> Cox committed defamation per se against Kurt Disser and Sabrina Graham on May 6, 2018 at 12:27 pm by posting defamatory imputation on Facebook stating that these individuals are "political mafia". Communications of defamatory imputation against Plaintiffs first occurred in Nov. 2016 when Cox posted, "Fight Against Brownsburg Annexation P.A.C. just committed an illegal/unethical act. It's called Pay to Play" and she specifically named Kurt and Sabrina.

Appellants' App. Vol. 2 at 12 (italics omitted).

[9] Cox, by counsel, filed a motion to dismiss Appellants' lawsuit as a violation of Indiana's anti-SLAPP statute; as explained below, such a motion is treated as a motion for summary judgment. In their response to Cox's motion, Appellants, by counsel, designated many of Cox's other statements quoted above and requested summary judgment in their favor. At the conclusion of the hearing on the motion, Cox argued that Appellants' request for summary judgment "would cause severe due process issues since [they] have moved the goal post by claiming different, uh, statements now that are defamatory than they said in their claim …." Tr. Vol. 2 at 13. The trial court magistrate stated that he would "take all this under advisement[,]" *id*. at 14, and ultimately issued an order denying Cox's motion to dismiss that did not specifically address her due process argument.

[10] A trial was held by a different magistrate over two days in February and May 2019. At the beginning of trial, Cox asked the court "to limit this trial to whether the claims that were brought in the notice of claim were defamatory and to strike all the other alleged defamatory statements as untimely brought."

*Id*. at 19. The trial court granted Cox's request over Appellants' objection. During trial, however, the court overruled Cox's objection to Appellants' questions regarding her additional statements because exhibits regarding those statements had been admitted without objection. In June 2019, the court entered judgment in favor of Cox, summarily finding that Appellants had "failed to meet their burden of proof." Appealed Orders at 1.[5] Both sides now appeal.

## Discussion and Decision

## Section 1 – The trial court did not err in denying Cox's motion to dismiss.

[11] We first address Cox's cross-appeal argument that the trial court erred in denying her motion to dismiss. Our supreme court has explained that "[p]ublic participation is fundamental to self-government, and thus protected by the Indiana and United States Constitutions. When citizens are faced with meritless retaliatory lawsuits designed to chill their constitutional rights of petition or free speech, … Indiana's anti-SLAPP statute provides a defense." *Gresk ex rel. Estate of VanWinkle v. Demetris*, 96 N.E.3d 564, 566 (Ind. 2018).

> Defendants may invoke the anti-SLAPP defense when faced with a civil action for acts or omissions "in furtherance of the person's right of petition or free speech" under the United States Constitution or Indiana Constitution "in connection with a

---

[5] Appellants suggest that the trial court found that they failed to meet their burden to prove actual malice. Appellants' Br. at 6. The trial court's order says nothing about actual malice.

public issue" and "taken in good faith and with a reasonable basis in law and fact."

*Id.* at 568-69 (quoting Ind. Code § 34-7-7-5). "Defendants who successfully invoke the statute's defense are entitled to dismissal and reasonable attorney's fees and costs." *Id.* at 569 (citing Ind. Code § 34-7-7-7).

[12] "Upon receiving an anti-SLAPP motion to dismiss, the court must determine three things: (1) whether an action was 'in furtherance of the person's right of petition or free speech;' and, (2) if so, whether the action was 'in connection with a public issue.'" *Id.* (quoting Ind. Code § 34-7-7-5(1)). "If both requirements are satisfied, the court then analyzes (3) whether the action was 'taken in good faith and with a reasonable basis in law and fact.'" *Id.* (quoting Ind. Code § 34-7-7-5(2)). "A motion to dismiss under Indiana's anti-SLAPP statute is treated as a motion for summary judgment." *Id.* at 567 (citing Ind. Code § 34-7-7-9(a)(1)).

[13] We review summary judgment rulings de novo and apply the same standard as the trial court. *Coulter v. Caviness*, 128 N.E.3d 541, 545 (Ind. Ct. App. 2019). The moving party "bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law." *Id.* (italics omitted). Summary judgment is improper if the moving party fails to carry its burden, "but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact." *Id.* (citation omitted).

> We will not reweigh the evidence but will liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. The party who lost at the trial court has the burden to persuade the appellate court that the trial court erred.

*Perkins v. Fillio*, 119 N.E.3d 1106, 1110 (Ind. Ct. App. 2019) (citations omitted). "Special findings are not required in summary judgment proceedings and are not binding on appeal[,]" but they offer this Court valuable insight into the trial court's rationale and facilitate appellate review. *Coulter*, 128 N.E.3d at 545.

[14] There appears to be no dispute that Cox's statements were made in furtherance of her right of petition or free speech. Indiana Code Section 34-7-7-9(b) provides that "[t]he person who files a motion to dismiss must state with specificity the public issue or issue of public interest that prompted the act in furtherance of the person's right of petition or free speech" under the federal or state constitutions. Appellants contend that Cox failed to do this. We disagree. In her motion, Cox asserted that her statements about Appellants "dealt with their roles as part of FABA and FABA's actions with regard to local elections. There is no more quintessential public issue than elections, PACs, political campaigns, and the manner in which money plays a role in them." Appellants' App. Vol. 2 at 21. The trial court agreed with Cox. *See* Appealed Orders at 3-4 ("There is no question that each of the two statements posted by [Cox] on the internet was speech made in connection with a public issue. Each of the statements concerned contested political elections and [Appellants'] alleged

influence on those elections. The public, particularly the citizens and voters in the Brownsburg Community School District, and Brown Township, had an undeniable interest in the issues raised by [Cox] in her statements.").

[15] Appellants contend that Cox's statements were not made in connection with a public issue because they were made in response to their "private" emails after the 2016 election was over. Appellants' Br. at 32.[6] But the allegedly private nature of Appellants' emails[7] and the conclusion of the 2016 election simply do not render that election, the 2018 primary election, or Appellants' alleged influence on those elections any less of a matter of public concern, which they most certainly are. *See Gresk*, 96 N.E.3d at 571 ("Regarding the First Amendment, we have said that speech is in connection with a matter of public concern if it is addressed to '"any matter of political, social, or other concern to the community," as determined by its content, form, and context.'") (quoting *Love v. Rehfus*, 946 N.E.2d 1, 9 n.6 (Ind. 2011) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)).

---

[6] Appellants raise this argument as a separate issue in their brief, asserting that the trial court essentially granted partial summary judgment in Cox's favor because it denied their motion to reconsider that part of its summary judgment ruling and denied their request to revisit the matter at trial. Because we agree with the trial court's determination that Cox's statements were made in connection with a public issue, we need not address the legal import of the court's refusal to reconsider the matter.

[7] Disser's email to Cox could be considered private, but Graham's emails to multiple recipients, with explicit requests to forward them to the recipients' contacts, are decidedly less so. Appellants seem to suggest that Cox's posting of their emails was itself defamatory, but they fail to explain how they were defamed by their own statements.

[16]     As for whether Cox's statements were made "in good faith and with a reasonable basis in law and fact[,]" Ind. Code § 34-7-7-5(2), we note that in the defamation context, "'good faith' has been defined as a state of mind indicating honesty and lawfulness of purpose; belief in one's legal right; and a belief that one's conduct is not unconscionable.'" *Pack v. Truth Publ'g Co.*, 122 N.E.3d 958, 966 (Ind. Ct. App. 2019) (quoting *401 Pub. Safety v. Ray*, 80 N.E.3d 895, 900-01 (Ind. Ct. App. 2017), *trans. denied*). "Whether a defendant acted in good faith in making a statement is usually a question of fact for the jury." *Kelley v. Tanoos*, 865 N.E.2d 593, 598 (Ind. 2007) (citation omitted).

[17]     In support of her motion to dismiss, Cox submitted an affidavit that reads in pertinent part,

> 3. A local [PAC, FABA], was engaged in a dispute with Brownsburg over the annexation of property to the north of Brownsburg during my campaign for school board.
>
> 4. I received an email from Disser on behalf of FABA in October 2016....
>
> 5. I had not had any substantial interactions with Plaintiffs or FABA prior to receiving Mr. Disser's email.
>
> 6. I understood Mr. Disser's email to be asking for a donation in exchange for an endorsement of my candidacy. I felt that this was an unethical practice and published a statement (to which Mr. Disser's email was attached) criticizing FABA's request as "Pay to Play," a practice which I believe is unethical and should not be a part of our political system....
>
> 7. I did not receive an endorsement from FABA.

8. In 2018, I saw a post on Facebook in which FABA was again endorsing candidates for local office. I wrote a post criticizing FABA for its pay-to-play practices and questioning the motives of those running the PAC.…

9. I did not have any substantial interaction with Plaintiffs or FABA between the 2016 election and my 2018 post on Facebook.

Appellants' App. Vol. 2 at 24-25.

[18] Although Cox's affidavit sets out the basis for her belief that Disser had engaged in what she perceived to be an unethical political maneuver, it fails to establish as a matter of law that she made her statement in good faith. Moreover, the affidavit sheds no light on the basis for Cox's statement that both Disser and Graham (who was not "running" FABA, at least in an official capacity) are "political mafia," let alone on whether that statement was made in good faith. Consequently, we affirm the trial court's denial of Cox's motion to dismiss.[8]

---

[8] The trial court's order is not entirely clear regarding whether the court considered only the statements mentioned in Appellants' notice of claim in ruling on Cox's motion. Cox argues that our review should be limited to those statements. Because Cox failed to establish as a matter of law that she made those statements in good faith, we need not address this argument. We note, however, that Cox did not file a motion to strike the additional statements designated in Appellants' response to her motion, which has been found to constitute waiver in similar circumstances. *Beta Steel v. Rust*, 830 N.E.2d 62, 69 (Ind. Ct. App. 2005).

## Section 2 – Appellants have failed to establish that the trial court's judgment is contrary to law.

[19]   We now address Appellants' argument that the trial court erred in entering judgment in favor of Cox on their defamation claim. "On appeal, we will not reverse a negative judgment unless it is contrary to law." *Kim v. Vill. at Eagle Creek Homeowners Ass'n*, 133 N.E.3d 250, 252 (Ind. Ct. App. 2019). "In determining whether a judgment is contrary to law, we consider the evidence in the light most favorable to the appellee, together with all the reasonable inferences to be drawn therefrom." *Id*. We neither reweigh evidence nor judge witness credibility. *Estate of Kappel v. Kappel*, 979 N.E.2d 642, 651 (Ind. Ct. App. 2012). "A judgment will be reversed only if the evidence leads to but one conclusion, and the trial court reached the opposite conclusion." *Kim*, 133 N.E.3d at 252. The trial court's judgment was a general judgment, unaccompanied by findings and conclusions, which may be affirmed on any legal theory consistent with the evidence. *Kappel*, 979 N.E.2d at 652.

[20]   Appellants are proceeding pro se, "but this does not mean that we will treat [their] brief any differently than we would if [they] were represented by counsel. Indeed, it has long been the rule in Indiana that pro se litigants without legal training are held to the same standard as trained counsel and are required to follow procedural rules." *Receveur v. Buss*, 919 N.E.2d 1235, 1238 n.4 (Ind. Ct. App. 2010) (italics omitted), *trans. denied*.

[21]   "Defamation is that which tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings

or opinions about the plaintiff." *Davidson v. Perron*, 716 N.E.2d 29, 37 (Ind. Ct. App. 1999), *trans. denied* (2000). "To establish defamation, the plaintiff must prove the following elements: (1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages." *Id.*[9]

> One type of defamation action, alleging defamation per se, arises when the language of a statement, without reference to extrinsic evidence, constitutes an imputation of (1) criminal conduct, (2) a loathsome disease, (3) misconduct in a person's trade, profession, office, or occupation, or (4) sexual misconduct. In contrast, if the words used are not defamatory in themselves, but become so only when understood in the context of extrinsic evidence, they are considered defamatory per quod. In actions for defamation per se, damages are presumed, but in actions for defamation per quod, a plaintiff must prove damages.

*Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184, 186 (citations and italics omitted). "Any statement actionable for defamation must not only be defamatory in nature, but false." *Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 136 (Ind. 2006).

[22] Indiana has adopted an "actual malice" standard in defamation for private plaintiffs in matters of public concern. *In re Ind. Newspapers, Inc.*, 963 N.E.2d 534, 550 (Ind. Ct. App. 2012). Plaintiffs "must show by clear and convincing

---

[9] More recent opinions have explained that "[m]alice is not a required element of a defamation claim between private individuals unless the alleged defamatory statement relates to a matter of public concern[,]" as in this case. *Charles v. Vest*, 90 N.E.3d 667, 672 (Ind. Ct. App. 2017) (citing *Mourning v. Allison Transmission, Inc.*, 72 N.E.3d 482, 489 n.3 (Ind. Ct. App. 2017)).

evidence that the defendant published the defamatory statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Id.* (quoting *Journal-Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 456 (Ind. 1999)).[10]

> Reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. To demonstrate reckless disregard, there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication, or proof that the false publication was made with a high degree of awareness of their probable falsity. Hence, a defendant's actual state of mind is a critical factor in the analysis. A defendant's state of mind is a subjective fact and may be shown by indirect or circumstantial evidence.

*Bandido's*, 712 N.E.2d at 456 (citations, alterations, and quotation marks omitted).

[23] Appellants' prolix brief has made it difficult for us to address their claims regarding Cox's statements, all of which Appellants characterize as defamatory per se in that they allegedly impute criminal conduct. Among other things, Appellants contend that

> [i]n 2016 after the November election was over, Cox falsely posted as fact, that the assistant Hendricks County Prosecutor determined the email sent by Disser [to Cox] was illegal, and

---

[10] Contrary to Appellants' suggestion, actual malice is not "an evil intent or motive arising from spite or ill will." *Wells v. Bernitt*, 936 N.E.2d 1242, 1248 (Ind. Ct. App. 2010) (citation and quotation marks omitted), *trans. denied* (2011).

> then in 2018 she posted as fact, declaring the prosecutor found
> what Graham did was illegal. Cox declared the prosecutor's
> office determined that Disser and Graham were involved in
> illegal pay-to-play. Cox's public statements regarding the
> prosecutor's conclusion were declaratory, not opinion. When
> she made them, she knew their falsity.

Appellants' Br. at 25 (citation and underlining omitted).

[24] The evidence most favorable to the trial court's judgment, however, is that Cox's political advisors asked then-assistant prosecutor (now prosecutor) Loren Delp about the legality of Disser's email. Delp told them that "even though you're not supposed to be doing Pay to Play or this kind of thing asking for a donation with an endorsement, they [i.e., prosecutors] don't step into it because they – they've got bigger cases to take care of and so they don't usually do anything about it and it's really hard to […] prove it." Tr. Vol. 2 at 201. Cox's advisors then told Cox about Delp's opinion.[11] In sum, Appellants failed to establish that Cox's statements regarding the illegality of Disser's email were false.[12] And to the extent that Cox also attributed that illegality to Graham, in light of Graham's close association with Disser and her penchant for blurring the distinctions between BNGAA and FABA, we cannot conclude that

---

[11] Appellants presented evidence that in November 2016, then-prosecutor Patricia Baldwin did not find any public records indicating that any complaints had been made or investigations opened against them as a result of Disser's email. That evidence does not contradict, let alone disprove, Cox's evidence regarding Delp's opinion about the email, which the trial court was entitled to find credible.

[12] Cox referred to Disser as a "lowly PAC president[,]" Ex. Vol. at 47, when he was in fact the treasurer, but Appellants make no substantive argument about this misstatement.

Appellants have established that the evidence leads only to the conclusion that Cox's statements were made in reckless disregard of the truth. *See, e.g.*, *Id*. at 115-16 (Graham acknowledging that she referred to BNGAA and FABA as collective "we" and requested financial assistance for FABA in an email).

[25] Appellants also complain about Cox's characterization of them as a political mafia, but we agree with Cox that this was nothing more than "rhetorical hyperbole," which is not actionable for defamation. *Greenbelt Co-op. Pub. Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) ("It is simply impossible to believe that a reader who reached the word 'blackmail' in either article would not have understood exactly what was meant: it was Bresler's public and wholly legal negotiating proposals that were being criticized. No reader could have thought that either the speakers at the meetings or the newspaper articles reporting their words were charging Bresler with the commission of a criminal offense."). Here, no reader of Cox's statements could have thought that Appellants were members of a violent criminal organization.[13] Accordingly, we affirm the trial court's judgment in favor of Cox.

[26] Affirmed.

May, J., and Pyle, J., concur.

---

[13] Appellants contend that Cox made other untruthful statements, including that FABA endorsed candidates for elections, but they fail to explain how those statements constitute defamation per se and fail to establish the extent of any damages for purposes of defamation per quod.